UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| BADER FARMS, INC. and | ) | |
|---|---|---|
| BILL BADER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-CV-299 SNLJ |
| | ) | |
| MONSANTO CO., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This case comes before the Court on plaintiffs' Motion to Remand (#30). Plaintiffs argue that this Court lacks subject matter jurisdiction because they bring only Missouri state law claims, none of which arise under federal law, and that their claims are not preempted by federal law. Defendant opposes this motion, arguing that this Court has original federal question jurisdiction under 28 U.S.C. § 1331 and that plaintiffs' claims are completely preempted under federal law. The issues are voluminously briefed and the case is ripe for disposition. For the following reasons, plaintiffs' motion is denied.

### I.  **Factual Background**

This case was originally filed in the 35th Judicial Circuit Court for Dunklin County, Missouri. Defendant removed the case to this Court, alleging original federal question jurisdiction under 28 U.S.C. § 1331 and that plaintiffs' claims are completely preempted under federal law, specifically, under the Federal Plant Protection Act ("PPA"), 7 U.S.C. §§ 7701 *et seq* and regulations promulgated pursuant to the PPA.

As alleged in the petition, plaintiffs' peach orchards were damaged by the "drift" of an herbicide, dicamba, onto their property that was illegally applied by surrounding farmers on their own crops to prevent weed growth. Dicamba is a "highly volatile" herbicide that "is prone to drift" onto surrounding properties, damaging crops that are not genetically modified to withstand the herbicide. Although defendant did not manufacture, distribute, sell, or apply the dicamba sprayed by the surrounding farmers, plaintiffs contend that defendant is liable for the damage to plaintiffs' crops because defendant developed and sold to those farmers genetically engineered ("GE") soybean and cotton seeds without selling a corresponding less-harmful herbicide to curb weed growth on those GE seeds.[1] Without releasing a corresponding herbicide, plaintiffs maintain, it was foreseeable that the farmers who purchased the new GE seeds would resort to using dicamba to curb the weed growth on those seeds.

GE seeds are highly regulated via federal statutes and regulations. The Animal and Plant Health Inspection Service ("APHIS") is delegated the authority to regulate biotechnology by the U.S. Department of Agriculture. Among other things, APHIS regulates "plant pests" under the PPA. 7 U.S.C. § 7702(14); *See also* 7 C.F.R. § 340.1. Most GE seeds are created using *agrobacterium*, and all GE seeds made using *agrobacterium* are presumptively considered "plant pests" under the regulatory scheme. *See* 7 C.F.R. § 340.2. The Administrator of APHIS may be petitioned to deregulate GE seeds, but only after a strenuous investigation process and only based on sound science. 7 C.F.R. §340.6. Any person may petition the Administrator that an article should not be

---

[1] The two seeds at issue in this case are Roundup Ready 2 Xtend soybeans ("Xtend soybeans") and Bollgard II XtendFlex cotton seeds ("XTend cotton").

regulated by APHIS. 7 C.F.R. §340.6. The regulations regarding the petition are extensive and further define what is required to attain nonregulated status. *See id.* Importantly, a petition to deregulate an article currently regulated under APHIS must "include information known to the petitioner which would be unfavorable to a petition." 7 C.F.R. § 340.6(b).

Nonregulated status, or deregulated status, in effect, allows for the commercialization and sale of that product. The two seeds at issue in this case were formally deregulated by APHIS. However, the seeds were released to the public before the approval of a corresponding herbicide by the Environmental Protection Agency ("EPA"), the regulatory body charged with the regulation of pesticides and herbicides. Plaintiffs state that it is customary in the industry to release both the GE seed and a corresponding herbicide to curb weed growth as a "complete crop system." Ultimately, all of plaintiffs' claims are based on the conclusion that plaintiffs would not have been harmed if defendant released the "complete crop system" for these GE crops. Plaintiffs nine state-law claims are: (1) strict liability – defective design; (2) strict liability – failure to warn; (3) negligent design and marketing; (4) negligent failure to warn; (5) negligent training; (6) breach of implied warranty of merchantability; (7) fraudulent concealment; (8) unjust enrichment; and (9) punitive damages.

**II.   Standard of Removal**

Removal statutes are strictly construed. *In Re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993). Any doubts about the propriety of removal are to be resolved in favor of remand. *Central Iowa Power Co-op. v. Indep.*

*Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). The party seeking removal has the burden to establish federal subject matter jurisdiction. *Id*. A civil action brought in state court may be removed to a proper district court if that district court has original jurisdiction over the lawsuit. 28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

To determine whether a claim arises under federal law, "[t]he general rule – known as the 'well-pleaded complaint rule' – is that a complaint must state on its face a federal cause of action in order for the action to be removable on the basis of federal-question jurisdiction." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). However, a case may arise under federal law under the "substantial federal question" doctrine when a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). However, a defendant cannot "inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Central Iowa Power Co-op.*, 561 F.3d at 912 (internal citation omitted). "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003)).

    **III.**    **Substantial Federal Question**

Although the parties spend much effort on whether federal preemption may apply to all counts, the motion to remand will be denied solely on this Court's determination that Count VII – fraudulent concealment – presents a substantial federal question. The fraudulent conduct alleged in the petition is that "Monsanto knew of [APHIS's and others'] ignorance of the truth and intentionally withheld the truth about its product and its risks," and that "Monsanto intended that [APHIS and others] should act in ignorance in carrying out their . . . oversight responsibilities . . . ." The "truth" was that there was a likelihood that farmers would illegally use the old dicamba herbicide with their new GE soybean and cotton seeds instead of waiting for a new "complete crop system" herbicide compatible with the new seeds, and that the old dicamba would tend to drift onto and destroy the crops of neighboring farmers – like the peach crops of plaintiffs here. The petition then states, "As a direct result of Defendant Monsanto's concealment of these material facts. . . [APHIS and others] were unable to perform their task to protect the public . . . and Plaintiffs were directly harmed in the manner herein described." Implicit in plaintiffs' claim is that APHIS would not have deregulated the new seeds had they known of the true risks involved, and that the seeds would not have been approved for sale.

To prevail on the fraudulent concealment claim, then, as plaintiffs themselves have couched it, plaintiffs must necessarily prove, inter alia, 1) that Monsanto had a duty to inform APHIS regarding the potential for illegal use of dicamba with the new seeds, 2) that the information was material to the decision to deregulate dicamba, and 3) the lack of this information caused APHIS to be unable to perform its regulatory duties. But

5

plaintiffs cannot dictate what duty was owed to APHIS, nor what kind of information should be material to APHIS's decisions. Nor can plaintiffs dictate the criteria under which APHIS was purportedly unable to perform its regulatory duties. All of these state-law proof requirements are dependent upon APHIS's actual practices and regulations, not what plaintiffs believe those practices and regulations should be. In that regard, the information Monsanto is required to disclose in support of a petition for deregulated status for its GE seed is set out in federal regulations – 7 C.F.R. §§ 340.6(b) and (c) (2017). It is that provision, in large part, that identifies the duty to provide information and the materiality of that information. Further, as the Supreme Court, itself, has explained, whether federal regulatory bodies fulfilled their duties with respect to the entities they regulate is "inherently federal in character." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001). Finally, Count VII is in a way a collateral attack on the validity of APHIS's decision to deregulate the new seeds. Despite plaintiffs' argument that they are not challenging the agency decision itself, they can only succeed on that count if they establish that the agency decision was incorrect due to defendant's fraudulent concealment. Under these circumstances, disposition of Count VII presents a substantial federal question.

*Grable & Sons Metal Products, Inc.* is especially instructive as it demonstrates how state law claims may raise substantial federal questions even when federal regulators are not sued. 545 U.S. at 314-16. In that case, Grable's property was seized by the IRS to satisfy a federal tax delinquency and subsequently was sold to a private business. 545 U.S. at 310. Five years later, Grable brought a quiet title action in state court, claiming

6

that the business' title was invalid because the IRS failed to properly notify Grable pursuant to federal law. *Id.* The Supreme Court held that Grable's action arose under federal law because the claim of title necessarily depended on the interpretation of the notice statute under federal tax law. *Id.* at 311. Similarly, in the case at hand, the outcome of the fraudulent concealment claim necessarily depends on the interpretation and application of the federal regulatory process under APHIS.

## IV. Conclusion

The Court finds plaintiffs' fraudulent concealment claim presents a substantial federal question, providing this Court with proper federal question jurisdiction. Thus, the matter was properly removed to this Court.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion to Remand (#30) is **DENIED**.

So ordered this 16th day of February, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE