UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| Bader Farms, Inc. and Bill Bader, | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) No. 1:16-cv-00299-SNLJ |
| Monsanto Company, | ) ) ) |
| Defendant. | ) ) |

**MONSANTO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO QUASH DEPOSITION NOTICE AND SUBPOENA OF DR. FORD BALDWIN AND MOTION FOR PROTECTIVE ORDER**

In response to the Court's order to show cause why this case should not be dismissed for lack of proximate cause, Plaintiffs moved to amend their complaint to add a new allegation that unspecified Monsanto representatives had instructed certain farmers to illegally spray dicamba over crops grown from Xtend seeds. Dr. Ford Baldwin voluntarily submitted an affidavit in support of that motion. Largely due to this new allegation, the Court permitted Plaintiffs to amend their complaint and denied Monsanto's motion. Given the significance of that recently-added allegation to the Court's decision, Monsanto now seeks, at an early stage in the litigation and before considerable additional resources are expended, to test Plaintiffs' allegation.

Accordingly, Monsanto has properly noticed the deposition of Dr. Baldwin as a fact witness to determine the factual basis for the assertion in his affidavit that Monsanto representatives told growers to illegally spray dicamba on their Xtend crops. Before being hired as an expert by Plaintiffs' counsel, Dr. Baldwin, by his own admission, worked as a consultant on dicamba issues and with the Arkansas State Plant Board and the Arkansas Dicamba Task

Force.[1]  As such, Dr. Baldwin is a fact witness who claims to be in possession of relevant factual information obtained apart from his retention as an expert.  The law is clear that deposing him on that narrow and discrete factual issue – as distinct from his expert opinions – is proper, notwithstanding his dual capacity as a fact and expert witness in this case.  Plaintiffs cannot prevent Monsanto's discovery of facts by designating a fact witness as an expert.

Plaintiffs' Motion misapprehends the limited scope of fact discovery sought here and ignores the relevant case law entitling Monsanto to that discovery.  This Court should deny the Motion, enforce the subpoena served on Dr. Baldwin, and order the deposition of Dr. Baldwin, currently set for September 18th in Little Rock, Arkansas, about 30 minutes from his residence, to proceed as scheduled.

**FACTUAL BACKGROUND[2]**

As this Court has determined, a question in this litigation is whether, as Plaintiffs have alleged, Monsanto's "representatives made a practice of directing farmers who purchased the Xtend seeds to illegally spray dicamba to their Xtend crops to protect their crops."  Doc. 61

---

[1] Dr. Baldwin's association with the Plant Board did not end when he was retained as an expert in this case.  Rather, he continues to advise the Plant Board on dicamba-related matters.

[2] To save the Court time, Monsanto will not review the relevant procedural background.  Monsanto does not dispute Plaintiffs' recitation of that background, with three exceptions.  First, Monsanto is not "disregarding the Court's judgment as to discovery" and is not seeking its own "'phased' discovery."  Motion at 4.  Monsanto is not proposing that all discovery stop until it deposes Dr. Baldwin on the narrow factual issue proposed and until this Court decides summary judgment motions related to that issue.  Plaintiffs are free to conduct discovery in this case – as, indeed, they already have.  Second, Plaintiffs mischaracterize the email correspondence between counsel for Monsanto, Jan Paul Miller, and their counsel.  At no point in that exchange did Mr. Miller "indicate[] Monsanto's intention to improperly question Dr. Baldwin about a broad, unspecified variety of issues relating to the underlying bases for Dr. Baldwin's expert opinions."  *Id.* at 5.  Exhibits 2, 3, 4, and 6 to Plaintiffs' Motion, which reproduce that correspondence, provide no support for Plaintiffs' description of what Mr. Miller said in his emails, and Plaintiffs cite none.  Third, Plaintiffs ask the Court to bar Monsanto from "harassing Dr. Baldwin, including entering onto his property, interfering in his vacations or activities …."  *Id.* at 9.  There was no harassment of Dr. Baldwin.  Monsanto made numerous attempts to serve Dr. Baldwin at his home.  After evading service for more than a week, Dr. Baldwin was finally served in a public place at a tractor sale.

(Order) at 3 (quoting Pls.' Amended Compl., ¶ 124).  In fact, this Court denied Monsanto's motion to dismiss only after Plaintiffs added this allegation in their amended complaint.

That allegation is at the heart of the present dispute.  In moving to amend their clients' Complaint, Plaintiffs' counsel represented to the Court that, after filing Plaintiffs' Petition in this case on November 23, 2016, she learned from Dr. Ford Baldwin, whom Plaintiffs later retained as an expert in this case, "that at an Arkansas State Plant Board hearing, a farmer testified under oath that his Monsanto representative told him to spray his Xtend seeds with dicamba."  Doc. 51-2 (Beverly Randles Aff., ¶ 4).  Dr. Baldwin's Affidavit, in turn, references two sources for his assertion that "[i]t has been stated by numerous people within the agricultural community … that Monsanto's representatives told farmers to illegally spray dicamba on their Xtend crops as early as 2015."  Doc. 53-1 (Dr. Baldwin's Aff., ¶ 65).  Dr. Baldwin specifically mentions only the sworn testimony of Donald Masters (the unnamed grower referenced by Ms. Randles in her affidavit (*id.*, ¶ 66)), given on July 8, 2016, but he also generically references "other statements that [he has] heard in the agricultural community, that other farmers were similarly advised."  *Id.*, ¶ 70.  The only "other statement" Dr. Baldwin identifies, however, is a quote by Dr. Bob Scott, cited in an article, that "[m]any growers [Dr. Scott has] talked to have suggested that they were 'told' it would be ok …."  *Id.*, ¶ 71.  Dr. Baldwin is "convinced that Monsanto told the farmers to spray," but cites only Mr. Masters' testimony before the Plant Board as the "proof of that."  *Id.*, ¶ 72.

Plaintiffs' Motion to Quash does not clear up this ambiguity.  While Plaintiffs appear to suggest that the only factual basis underlying Dr. Baldwin's assertions is the sworn testimony of Mr. Donald Masters, they also reference other "fact witnesses."  *Compare* Motion at 4, 7 ("Monsanto has access to the actual transcript of sworn testimony of Donald E. Masters,

reviewed by Dr. Baldwin ….") ("Monsanto can obtain information about Donald Masters by reviewing the hearing transcript or by deposing Mr. Masters.") *with* 8 ("Monsanto can obtain all of the information it claims to seek by conducting discovery of actual fact witnesses, including Mr. Masters, ….").

Dr. Baldwin, by his own admission, has, since 1974, "consistently attended Arkansas State Plant Board meetings, offering [his] expert opinion and giving written and verbal testimony on a variety of herbicide issues, including dicamba drift and the effect of dicamba on plants." Doc. 53-1 (Dr. Baldwin's Aff.) at ¶ 10.  After retiring, Dr. Baldwin continued to regularly attend the Arkansas State Plant Board's meetings, including those on "off-target issues with dicamba." *Id.*  Starting in 2016, the Board asked him to "attend all pesticide committee meetings involving dicamba, including meetings on complaints, fines, and penalties for illegal dicamba spraying." *Id.*  At the July 8, 2016 meeting of the Pesticide Committee of the Arkansas State Plant Board, at which Donald Masters gave his sworn testimony, the Committee sought to "determine whether there has been a violation of the rules and regulations that govern the Arkansas State Plant Board and Pesticide Committee, and whether Mr. Masters used pesticide [i.e., dicamba] in a manner inconsistent with the labeling registered with the Environmental Protection Agency or Plant Board for that pesticide." Doc. 53-12 (Hr'g Tr.) at 7.

**ARGUMENT**

Plaintiffs can quickly end the present dispute, sparing the Court and the parties additional time and resources.  If Plaintiffs are arguing that Monsanto does not need to depose Dr. Baldwin because all he has to say about the allegation that Monsanto representatives told growers to illegally spray dicamba on their Xtend crops is what is in the Masters hearing transcript, and that Dr. Baldwin has no other information of any sort regarding this allegation, then they are correct

that Monsanto would not need to depose Dr. Baldwin on that issue at this time.  This Court's analysis would need to go no further, and Monsanto would withdraw its subpoena and notice of deposition.  If, however, Dr. Baldwin claims to have any additional information regarding that allegation, independent of Mr. Masters' testimony at the Plant Board hearing, then Monsanto should be allowed to depose him as a fact witness to obtain such information and probe the factual basis underlying his knowledge of such information.

That is discoverable information.  By his own admission, Dr. Baldwin acquired facts and information, independently from his retention as an expert, concerning the allegation that Monsanto told growers to illegally spray dicamba.  According to Plaintiffs' counsel, Dr. Baldwin was retained after November 2016, when Plaintiffs filed their Petition.  Donald Masters gave his sworn testimony to the Pesticide Committee of the Arkansas State Plant Board on July 8, 2016, months before Plaintiffs filed their lawsuit.  Furthermore, Dr. Baldwin admits in his Affidavit that, according to "numerous people" in the agricultural community, Monsanto's representatives were telling farmers to spray dicamba over their Xtend crops "as early as 2015."  Monsanto has the right to conduct fact discovery to identify those individuals.

Dr. Baldwin is therefore a fact witness on the issue of what Monsanto's representatives were allegedly telling growers and subject to deposition the same as any other fact witness.  Plaintiffs cannot shield Dr. Baldwin from being deposed by naming him as their expert.  Plaintiffs have filed 70 pages of paper (an 11-page motion and 59 pages of exhibits) trying to persuade the Court that Monsanto should be precluded from deposing Dr. Baldwin on a discreet factual issue.  The matter is more straightforward when framed properly.

**A.**     **Rule 26 and Rule 45**

This Court has wide discretion in dealing with discovery matters. *Centrix Fin. Liquidating Trust v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 4:12–MC–624–JAR, 2013 WL 3225802, at *2 (E.D. Mo. June 25, 2013). "Moreover, '[d]iscovery rules are to be 'broadly and liberally construed' in order to serve the purpose of discovery which is to provide the parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Id.* (quoting *Gladfelter v. Wal–Mart Stores, Inc.*, 162 F.R.D. 589, 590 (D. Neb. 1995)).

Discovery sought through a Rule 45 subpoena must fall within the scope of discovery permissible under Rule 26(b). *Id.* Before enforcing a Rule 45 subpoena, the court considers whether it imposes an "undue burden." *Id.* The "'undue burden' factor is 'designed to track Rule 26(c), the principal protective order provision applicable in federal discovery.'" *Id.* (quoting *In re NCAA Student–Athlete Name & Likeness Licensing Litigation*, 2012 WL 4856968, at *2 (E.D. Mo. Oct. 12, 2012)). In deciding whether an "undue burden" exists, the court considers "the protections provided in Rule 26(c) in determining whether there are grounds to quash or modify the subpoena under Rule 45." *Id.* "[T]he factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Id.* (citing *Plant Genetic Systems, N.V. v. Northrup King Co., Inc.*, 6 F.Supp.2d 859, 861 (E.D. Mo. 1998)). The party moving to quash a subpoena bears a heavy burden of proving that it poses an undue burden. *Tyler v. Rahe*, No. 08–00129–CV–W–DW, 2014 WL 1875257, at *1 (W.D. Mo, May 9, 2014).

Similarly, "[t]he party moving for the protective order has the burden to demonstrate good cause for issuance of the order." *Buehrle v. City of O'Fallon, Mo.*, No. 4:10CV00509 AGF, 2011 WL 529922, at *2 (E.D. Mo. Feb. 8, 2011). To make the requisite showing of good cause, the moving party must make "'a particular and specific demonstration of fact, as distinguished from stereotype and conclusory statements.'" *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). To establish good cause, "the part[y] seeking protection must show that specific prejudice or harm will result if no protective order is granted." *Id.* The prejudice or harm protected by Rule 26(c) includes "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c).

**B.    Monsanto may depose Dr. Baldwin as a fact witness.**

Plaintiffs invoke three out of the four subsections of Rule 45(d)(3)(A). They argue that the subpoena should be quashed because it fails to allow a reasonable time to comply (subsection (i)), requires disclosure of privileged or other protected matter (subsection (iii)), and it imposes an undue burden on them as well as on Dr. Baldwin (subsection (iv)). Motion at 6-9.

Plaintiffs' arguments are all based on the flawed notion that Dr. Baldwin's status as an expert somehow shields him from being deposed as a fact witness on the narrow factual issue proposed here. Plaintiffs do not object to Monsanto's ability to depose Dr. Baldwin in due time pursuant to the "Case Management Order under expert discovery." *Id.* at 6. They suggest only that it is a waste of time, money, and efforts to depose him before the deadline for his disclosures, and then seek to depose him again after disclosures. *Id.* at 8-9. Plaintiffs also do not suggest that Dr. Baldwin's deposition testimony is irrelevant.

Plaintiffs' arguments miss the mark. To the extent Dr. Baldwin acquired facts and information about what Monsanto representatives allegedly told growers before he was retained

as an expert, he is a fact witness and subject to deposition, just like any other fact witness. *See U.S. v. $122,640.00 in U.S. Currency*, No. JKB-13-3778, 2014 WL 5088261, at *1 (D. Md. Oct. 8, 2014) (denying motion to quash subpoena for deposition of expert because he was also a material fact witness, and the claimant could not shield him from being deposed by naming him as her expert); *Nelco Corp. v. Slater Elec. Inc.*, 80 F.R.D. 411, 414-15 (E.D.N.Y. 1978) (explaining that "the mere designation by a party of a trial witness as an 'expert' does not thereby transmute the experience that the expert witness acquired as an actor into experience that he acquired in anticipation of litigation or for trial").[3]

Here, Dr. Baldwin, by voluntarily submitting an affidavit in support of Plaintiffs' motion for leave to amend, claims to have factual information pertaining to the allegation that Monsanto representatives told growers to illegally spray dicamba over their Xtend seeds.  Dr. Baldwin must therefore be treated as an ordinary witness as to the information he has gathered on what Monsanto told growers.  He must appear and be deposed in regard to that information.  Obviously, he is not required to answer questions concerning opinions developed or acquired in anticipation of or in preparation for trial, and Monsanto will not question him on those opinions.  However, Monsanto, as the defendant, can conduct discovery in any sequence it deems necessary and appropriate.  It should not have to wait to depose Dr. Baldwin on a discrete factual issue that is central to this litigation, and that can potentially end this litigation, sparring the court and the parties time and money.  Monsanto also should not be required to wait until late in the discovery process to first learn the identity of the individuals Dr. Baldwin referenced in his Affidavit.

---

[3] *See also Expeditors Int'l of Wash., Inc. v. Vastera, Inc.*, No. 04 C 0321, 2004 WL 406999, at *3 (N.D. Ill. Feb. 26, 2004) (holding that a Rule 45 subpoena "is an appropriate discovery mechanism against nonparties such as a party's expert witness"); *Atari Corp. v. Sega of America*, 161 F.R.D. 417, 421 (N.D. Cal. 1994) (holding that Rule 26 does not prevent parties from seeking discovery from experts through a subpoena where the expert has factual knowledge relevant to the subject matter of the lawsuit); *Metris U.S.A., Inc. v. Faro Techs., Inc.*, No. 09-cv-01718-JLK-MEH, 2009 WL 2916811, at *3 (D. Colo. Sept. 8, 2009) (collecting cases)).

The rest of Plaintiffs' Motion, which has no bearing whatsoever on whether Monsanto may depose Dr. Baldwin as a fact witness on a discrete factual issue, can be dealt with quickly. Monsanto's subpoena was served on Dr. Baldwin on September 1st and it notices his deposition for September 18th, more than 14 days from the date of service. The notice therefore gives Dr. Baldwin, a fact witness, a reasonable time to comply with the subpoena. *See Joplin Schools v. P1 Group, Inc.*, Case No. 3:15-CV-05026-DGK, 2016 WL 3512262, at *2 (W.D. Mo. June 22, 2016).[4]

Plaintiffs know that Monsanto wishes to depose Dr. Baldwin only as a fact witness, not as an expert, but they nevertheless argue that there is no prejudice to Monsanto "because the activities of the Arkansas State Plant Board and the Arkansas Dicamba Task Force can be discovered in a myriad of other ways," and that they "would be greatly prejudiced by early discovery of their expert as they have not had sufficient time to conduct all discovery necessary to determine his opinions and prepare for his testimony." Motion at 6-7. As defense counsel Mr. Miller has explained to Plaintiffs' counsel, Monsanto wants to depose Dr. Baldwin on his factual information concerning the allegation that Monsanto told growers to spray dicamba – not on the broad topic of the activities of the Plant Board and the Task Force in general. Furthermore, Monsanto will not question Dr. Baldwin on his opinions for this litigation. To the extent that this case eventually proceeds to the point where expert opinions are submitted, Monsanto will reserve its questioning of Dr. Baldwin as an expert until that time. Nor will Monsanto probe any

---

[4] *But cf. Basich v. Patenaude & Felix, APC*, No. 12–9013–MC–W–FJG, 2012 WL 2886663 (W.D. Mo. July 13, 2012) (two days' notice held unreasonable) (citing *Fox v. Traverse City Area Public Schools Board of Education*, No. 1:07–CV–956, 2009 WL 724001 (W.D. Mich. Mar. 10, 2009) ("[t]wo business days, more or less, even with the intervening weekend, is not an adequate period of time to comply with a subpoena."); *Paul v. Stewart Enterprises, Inc.*, No. Civ.A 99–3441, 2000 WL 1171120, (E.D. La. Aug. 16, 2000) ("[o]ne business days' notice is clearly unreasonable in light of the requirement in Fed. R. Civ. P. 45(c)(2)(B) that a subpoenaed person be permitted 14 days to object.")).

opinions developed or acquired by Dr. Baldwin in anticipation of or in preparation for trial. Allowing Dr. Baldwin to be deposed will not prejudice Plaintiffs. Nor will the subpoena require disclosure of privileged or other protected matter because Dr. Baldwin will be deposed as a fact witness, not an expert witness.

Dr. Baldwin's status as a fact witness for purposes of the noticed deposition also means there is no "undue burden" on him. He will not be subject to "multiple depositions on the same subject matter." Motion at 8. And because he will be deposed as a fact witness, he is only entitled to a witness attendance fee of $40.00 per day plus a round trip mileage fee. *See* 28 U.S.C § 1821(b) and (c)(2). Dr. Baldwin was given a check for all his fees when he was served. Moreover, Plaintiffs fail to explain how having to travel some 27 miles for a deposition, which will probably not exceed 2 hours, amounts to "harassing" Dr. Baldwin or imposes an undue burden on him.

The claimed undue burden on Plaintiffs themselves is even more tenuous. Plaintiffs argue that they "have not received any discovery" from Monsanto, so "[a] deposition now would be a waste of time and resources." Motion at 9. They also contend that subjecting Dr. Baldwin to "multiple depositions will have burdensome costs associated with preparing for, traveling to, and attending multiple depositions." *Id.* Again, Plaintiffs are making a mountain out of a molehill. Monsanto wants to depose Dr. Baldwin on a narrow factual issue. Monsanto likely will not need more than 2 hours (if that) for the deposition. And if Plaintiffs' papers and Dr. Baldwin are to be believed, Dr. Baldwin appears to be relying on only Mr. Masters' sworn testimony, Dr. Bob Scott, and maybe some other unnamed persons. Plaintiffs' counsel has already obtained and presumably reviewed the transcript of Mr. Masters' testimony, and having

to prepare for the narrowly focused deposition of Dr. Baldwin will hardly unreasonably burden Plaintiffs' counsel.

In sum, Plaintiffs have not come close to satisfying their burden of proving that the subpoena poses an undue burden. Moreover, the balancing of the factors used to determine the propriety of the subpoena clearly favors Monsanto. Plaintiffs do not contest the relevance of the factual testimony sought from Dr. Baldwin, nor have they shown any hardship to Dr. Baldwin from having to comply with the subpoena. Plaintiffs have similarly failed to show good cause for a protective order. All they offer are conclusory statements about claimed prejudice based on the status of Dr. Baldwin as their retained expert. And, as explained, that is plainly insufficient.

## CONCLUSION

If Plaintiffs confirm that the only factual basis for Dr. Baldwin's assertions concerning what Monsanto representatives allegedly told growers is the sworn testimony of Donald Masters, then Monsanto does not need to depose Dr. Baldwin on that issue at this time. But if Dr. Baldwin is relying on facts independent of Mr. Masters' testimony for that allegation, then Monsanto should be allowed to depose Dr. Baldwin as noticed. The examination Monsanto proposes to conduct is limited to factual matters; it will not implicate Dr. Baldwin's expert opinion on any topic. Plaintiffs' Motion does not provide any valid grounds or legal authority on which to quash Monsanto's notice of deposition or enter a protective order. Monsanto's notice allows Dr. Baldwin a reasonable time to comply; it does not seek protected information; and it does not subject Dr. Baldwin to any undue burden or harassment. Plaintiffs' Motion should be denied, and this Court should enforce the subpoena and order Dr. Baldwin to appear for his noticed deposition on September 18, 2017 and respond to questions regarding all facts and evidence he has knowledge of concerning what Monsanto representatives allegedly told growers.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Jan Paul Miller
    Jan Paul Miller, Missouri USDC, Eastern District – 58112MO
    Daniel C. Cox, Missouri USDC, Eastern District - 38902MO
    Christopher M. Hohn, Missouri USDC, Eastern District – 44124MO
    A. Elizabeth Blackwell, Missouri USDC, Eastern District – 50270MO
    Jeffrey A. Masson, Missouri USDC, Eastern District - 60244MO
    One US Bank Plaza
    St. Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000

*Attorneys for Defendant Monsanto Company*

## CERTIFICATE OF SERVICE

    I hereby certify that on September 13, 2017, the foregoing was served via electronic mail to all counsel of record.


/s/ Jan Paul Miller