UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| BADER FARMS, INC. and | ) | |
| BILL BADER | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-CV-299-SNLJ |
| | ) | |
| MONSANTO CO. and | ) | |
| BASF CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs bring this action against Monsanto Company (a company that sells crop seed and herbicide) and BASF Corporation (a company that sells herbicide), alleging both defendants committed a number of torts related to their dicamba-based herbicides. Plaintiffs claim both defendants conspired to create an "ecological disaster," where Monsanto released its dicamba-tolerant seed in 2015 and 2016 with no corresponding dicamba herbicide. As a result, farmers illegally sprayed an old formulation of dicamba herbicide that was unapproved for in-crop, over-the-top, use and was "volatile," or prone to drift. This damaged neighboring crops, which forced neighboring farmers to plant Monsanto's dicamba-tolerant seed defensively, and that increased demand for both defendants' new dicamba herbicide during the 2017 growing season.

This matter is before the Court on BASF's motion to dismiss (#109). Plaintiffs' fraudulent concealment count will be dismissed entirely because plaintiffs failed to plead reliance. Plaintiffs' negligence-based counts that seek to hold BASF liable for 2015 and

1

2016 damage also are dismissed for two reasons. First, BASF did not have a dicamba herbicide approved for in-crop, over-the-top, use on the market until late 2016. So it did not independently cause any 2015 or 2016 damage. Second, it cannot be held liable for its co-conspirator Monsanto's *negligent* acts under an acts-of-a-co-conspirator theory. Thus, BASF may be held liable for the 2015 and 2016 damage only if plaintiffs eventually show (1) Monsanto and BASF entered into a conspiracy and (2) the 2015 and 2016 damage flowed naturally from that conspiracy. Finally, plaintiffs may assert all claims (except fraudulent concealment) against BASF for any damage allegedly caused by its new dicamba herbicide in 2017.

## I. Factual and Procedural Background

Monsanto develops, manufactures, and sells crop seed—especially cotton and soybean seed—that are genetically engineered to tolerate certain herbicides. The herbicides are designed to kill unwanted weeds that hurt crop yield, and farmers use different crop "systems" for that purpose. They plant seed that are genetically engineered to tolerate a herbicide, then they spray that herbicide during the growing season (this is called "over-the-top" or "in-crop" spraying). In theory, the herbicide will kill unwanted weeds without harming the crops.

In 2015, Monsanto released its dicamba-tolerant cotton seed. A year later, it released its dicamba-tolerant soybean seed. During both 2015 and 2016, Monsanto's dicamba-tolerant seed were on the market without a corresponding dicamba herbicide that could be sprayed in-crop, or over the top, of the dicamba-tolerant crops. BASF did sell "old" dicamba-based herbicides during this time, but those herbicides were not

2

approved for in-crop, over-the-top, use (and thus could not legally be sprayed over the top), presumably because they were volatile and prone to drift. Instead, these old dicamba products generally were used during the "burndown" period, where farmers try to kill unwanted weeds before the planting season. Finally, in late 2016, the Environmental Protection Agency ("EPA") approved Monsanto's new dicamba herbicide ("XtendiMax") and BASF's new dicamba herbicide ("Engenia")—herbicides that were developed and marketed as less volatile and less prone to drift than old dicamba—making them available for the 2017 growing season. These new dicamba herbicides, plaintiffs allege, are no better than old dicamba because they too are volatile and prone to drift.

Plaintiffs own and operate a massive peach growing business in southeast Missouri. They filed this suit back in 2016, naming Monsanto as the only defendant. Plaintiffs claimed neighboring farmers planted Monsanto's dicamba-tolerant cotton and soybean seed in 2015 and 2016. With no corresponding dicamba herbicide on the market, these neighboring farmers illegally sprayed the old dicamba that was on the market but unapproved for over-the-top spraying. The old dicamba allegedly drifted off the target fields and damaged plaintiffs' peach trees. Plaintiffs claimed Monsanto is liable in several respects by releasing its seed without a corresponding herbicide because it was foreseeable that farmers would illegally spray old dicamba.

Monsanto moved to dismiss (#6), arguing it could not be held responsible for the damage because it did not manufacture, distribute, sell, or apply the old dicamba that allegedly damaged plaintiffs' peach trees. In ruling on Monsanto's motion to dismiss, this Court noted

> even if Monsanto was negligent in its release of the [genetically engineered] seeds without a corresponding herbicide, it appears that its conduct was simply too attenuated to establish proximate cause. Instead, plaintiffs' injuries stem directly from an intervening and superseding cause—the unforeseeable independent acts by the third-party farmers who unlawfully sprayed dicamba on their crops.

*Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299-SNLJ, 2017 WL 1315792, at *3 (E.D. Mo. Apr. 10, 2017), *vacated*, No. 1:16-CV-299-SNLJ, 2017 WL 2813393 (E.D. Mo. June 29, 2017). This Court also observed that even if "the third-party farmers' unlawful conduct was at all foreseeable because [old] dicamba was an available herbicide and the new [genetically engineered] seeds were dicamba-resistant, that foreseeability was wholly negated by the [genetically engineered] seeds' product warning labels [which explicitly told farmers not to apply dicamba herbicide in-crop], prominently highlighted on all bags of cotton and soybeans sold." *Id.* With that all in mind, this Court deferred a ruling on the motion, gave plaintiffs more time to respond to defenses based on the bag warnings, and treated the motion to dismiss as a motion for summary judgment. *Id.*

Next, plaintiffs moved to amend their complaint and asked the Court to vacate its order treating Monsanto's motion to dismiss as a motion for summary judgment. This Court granted both requests. *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299-SNLJ, 2017 WL 2813393, at *1 (E.D. Mo. June 29, 2017). Explaining why it granted the requests, this Court noted

> [a]lthough the Court maintains reservation about whether defendant's action or inaction proximately caused plaintiffs' injuries, the allegation that defendant's representatives instructed seed-purchasing farmers to illegally spray [old] dicamba on the defendant's seeds, if true, would seemingly negate the effectiveness of the product use labels attached to defendant's seeds in addition to altering the proximate causation analysis of this case.

4

*Id.* at *3.

In their amended complaint (#62), plaintiffs added a new count for civil conspiracy, alleging Monsanto conspired with farmers who bought dicamba-tolerant seed to corner the market such that other farmers would have no choice but to plant Monsanto's dicamba-tolerant seed. Monsanto did not file a new motion to dismiss and instead filed its answer (#64).

Then, plaintiffs asked for leave to file a second amended complaint (#68), and this Court again granted their request. *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299-SNLJ, 2017 WL 4758886, at *1 (E.D. Mo. Oct. 20, 2017). As relevant here, plaintiffs (1) added BASF as a defendant, (2) amended their civil conspiracy count that now alleges Monsanto and BASF—not Monsanto and the farmers who bought dicamba-tolerant seed—conspired to create an "ecological disaster," and (3) added allegations that they have suffered damage in 2017, after Monsanto's and BASF's new dicamba herbicides were approved for in-crop use. There are now eight counts: (1) strict liability–design defect, (2) strict liability–failure to warn, (3) negligent design and marketing, (4) negligent failure to warn, (5) negligent training, (6) fraudulent concealment, (7) trespass, (8) civil conspiracy, and (9) punitive damages. After being added as a defendant, BASF moved to dismiss (#109) the claims against it.

Finally, two months ago, this case was made part of the multidistrict litigation ("MDL") *In re Dicamba Herbicides Litigation*, 1:18-MD-2820-SNLJ (E.D. Mo.) (#130). In the MDL's Initial Order, this Court explained it would consider motions that were

5

fully briefed before the member case was transferred to the MDL. This is one of those motions.

This case is complex because it involves different time periods, products, and defendants. So, before wading into the merits of BASF's motion to dismiss, the Court will briefly explain its understanding of the allegations and theories of liability.

**2015 and 2016 Damage.** Here, the question seems to be did Monsanto commit any of the alleged torts by releasing its dicamba-tolerant seed before it released its corresponding dicamba herbicide. The heart of this question appears to be whether it was foreseeable that farmers would illegally spray old dicamba over the top of their dicamba-tolerant crops, despite the bag warnings on Monsanto's seed. Why else did they buy the dicamba-tolerant seed, or so the theory goes. At this point, BASF had no product in the mix. Its old dicamba was on the market in 2015 and 2016, but plaintiffs do not base any claims on BASF's old dicamba. In fact, plaintiffs explicitly define "dicamba-based products"—which are the subject of this lawsuit—as (1) Monsanto's dicamba-tolerant cotton and soybean seed, (2) Monsanto's new dicamba herbicides, and (3) BASF's new dicamba herbicide. (#77 at 99, ¶ 552.) It appears that BASF is involved at this point only as part of the alleged conspiracy with Monsanto.

**2017 Damage.** Here, there seem to be two questions. One, did Monsanto commit any of the alleged torts by releasing its new dicamba herbicides? Two, did BASF commit any of the alleged torts by releasing its new dicamba herbicide? Of course, the civil conspiracy count is also still relevant during this time. If plaintiffs ultimately show Monsanto and BASF conspired, there will be a third question: what damages flowed

naturally from the conspiracy? As pled, the conspiracy damage calculation would likely include plaintiffs' 2015, 2016, and 2017 damage, and Monsanto and BASF would be jointly and severally liable.

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint and eliminates those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (alteration in original) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (*quoting Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

## III. Discussion

BASF aims two arguments at the entire second amended complaint. It also makes count-specific arguments. The Court will consider the arguments directed at the entire complaint first, before moving to the count-specific arguments, which it will consider one by one.

### A. Rule 8 Pleading Requirements

First, BASF argues the second amended complaint should be dismissed because it does not comply with Rule 8. The second amended complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8's pleading requirements are meant "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

BASF argues the second amended complaint—with its 113 pages and 643 paragraphs—"[i]s [a]nything [b]ut short, [p]lain, [s]imple, [c]oncise, and [d]irect." (#123 at 4.) There is no doubt the second amended complaint is long, but this is likely because the lawsuit is complicated. As explained above, the lawsuit is complicated because it involves different time periods, products, and defendants, but the theories of liability give BASF fair notice of the claims against it and the grounds on which those claims rest.

### B. Rule 12(b)(6) Pleading Requirements

Second, BASF argues the second amended complaint should be dismissed pursuant to Rule 12(b)(6) because plaintiffs' claims "[a]re [b]ased [o]n [n]othing [m]ore [t]han [n]aked [a]ssertions [d]evoid [o]f [a]ny [f]acts." (# 110 at 6.) BASF claims the plaintiffs fail to "identify the individual farmers who applied BASF herbicides, when the applications were made, in what amounts, under what 'conditions,' or which BASF-branded herbicide harmed which fields." (# 118 at 4.) The Court assumes this argument relates to damage incurred in 2017, and the Court agrees with plaintiffs that Rule 12(b)(6)

does not require that level of specificity. Instead, "[a] complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (second alteration in original) (*quoting Iqbal*, 556 U.S. at 678). The inference is that, during the 2017 growing season, farmers near plaintiffs sprayed new dicamba herbicide over the top of their dicamba-tolerant crops. The new herbicide drifted off target, onto plaintiffs' peach farm, damaging plaintiffs' peach trees.

  C. **Claims for 2015 and 2016 Damage**

Third, BASF argues plaintiffs' claims for 2015 and 2016 damage fail because BASF did not cause any damage in 2015 and 2016. It points out that "[p]laintiffs do not identify a single BASF product they believe was applied in 2015 or 2016." (# 110 at 8.) It is true that "[i]n all tort cases, the plaintiff must prove that each defendant's conduct was an actual cause . . . of the plaintiff's injury[.]" *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 113 (Mo. banc 2007). "In most cases, the plaintiff must establish actual causation by showing that the alleged harm would not have occurred 'but for' the defendant's conduct." *Id.* at 114. Different from actual cause, proximate cause then asks "whether the defendant should be held liable because the harm is the reasonable and probable consequence of the defendant's conduct." *Id.*

Plaintiffs claim they have adequately pled causation under Missouri law. They say "[t]he fundamental flaw in BASF's entire legal memorandum is its erroneous assumption that [p]laintiffs allege that BASF is only liable for damage caused by spraying its dicamba herbicides." (#118 at 6.) Plaintiffs explain that "the product at

9

issue and the product that caused [p]laintiffs' injuries is Defendants' entire defective 'crop system.'" (#118 at 7.) It is unclear what plaintiffs mean by "Defendants' [plural] entire defective 'crop system.'" Together, dicamba-tolerant seed and dicamba herbicide make up a crop system, and Monsanto does sell the complete crop system. But BASF does not. It sells the dicamba herbicide only. And while plaintiffs allege Monsanto and BASF developed the products together, conspired together, and so on, the fact is each company sells its own products—separately. Other than allegedly agreeing to conspire with Monsanto, it is difficult to see how BASF played any role in releasing an allegedly defective crop system in 2015 and 2016.

To cure this problem, plaintiffs argue (with almost no explanation) "[a] conspirator is liable for its co-conspirator's actions in furtherance of the conspiracy. That alone forms a sufficient basis to deny BASF's motion." (#118 at 9) (internal citation omitted). "Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012). "[R]ather, it acts to hold the conspirators jointly and severally liable for the underlying act." *Id.* (alteration in original) (*quoting 8000 Md., LLC v. Huntleigh Fin. Servs. Inc.*, 292 S.W.3d 439, 451 (Mo. Ct. App. 2009)). "The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff." *Id.* (*quoting Huntleigh Fin. Servs. Inc.*, 292 S.W.3d at 451).

BASF responds that it "cannot be liable through conspiracy for acts of negligence. It is logically and legally impossible for BASF to intentionally conspire with Monsanto to

be negligent." (#123 at 7.) While the Court agrees two parties cannot conspire to act negligently, *see Ho v. United States*, No. CIV. 12-126 DWF/LIB, 2012 WL 6861343, at *8 (D. Minn. Dec. 11, 2012) (citing cases), *report and recommendation adopted*, No. CIV. 12-126 DWF/LIB, 2013 WL 160119 (D. Minn. Jan. 15, 2013), it seems that BASF could be liable for Monsanto's acts that caused damage in 2015 and 2016 *if* Monsanto *intentionally* did those acts in furtherance of the conspiracy to create an "ecological disaster." Yet plaintiffs allege Monsanto's acts in furtherance of the conspiracy also satisfy the elements of the offenses listed in Counts I through VII and Count IX, five of which are rooted in negligence (including two counts of strict liability), along with one count of fraudulent concealment and one count of trespass (an intentional tort). Accordingly, the conspiracy and trespass counts against BASF can proceed, but the negligence-based counts (Counts I through IV) cannot.

### D. Fraudulent Concealment

Fourth, BASF argues plaintiffs' fraudulent concealment claim should be dismissed because plaintiffs failed to (1) comply with Rule 9(b)'s pleading requirements, (2) plead that BASF had a duty to speak, and (2) plead reliance. The Court agrees plaintiffs failed to plead reliance.

"[T]o make a submissible case of fraudulent misrepresentation, a plaintiff must prove . . . the hearer's reliance on the representation being true . . . [and] the *hearer's* consequent and proximately caused injury." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007) (emphasis added).

Plaintiffs allege "Defendants have known the risks to third-parties due to their dicamba-based products' volatility, off-target movement, drift potential, damage to non-[dicamba-tolerant] crops, as well as certainty for the use of illegal and unsafe herbicides with their products." (#77 at 105, ¶ 593.) They also allege defendants "intentionally and maliciously chose to conceal these facts from farmers, federal and state regulatory bodies,[1] farming associations, legislative bodies, the general public, and [p]laintiffs." (#77 at 105, ¶ 594.) Because defendants concealed this information, plaintiffs allege, "farmers purchased the products, regulatory and legislative bodies were unable to perform their task to protect the public, the public was kept in ignorance, and [p]laintiffs were directly harmed[.]" (#77 at 106, ¶ 606.)

Plaintiffs identify two statements (#77 at 23, ¶ 140; #77 at 65, ¶ 370) attributed to BASF, but plaintiffs do not allege they either heard or relied on the statements. Nor do plaintiffs allege they relied on BASF's silence. This makes sense because, under plaintiffs' theory, the neighboring farmers who sprayed new dicamba would be the "hearers" who relied on BASF's statements (or lack thereof), not plaintiffs. And as BASF points out, "[p]laintiffs also entirely ignore BASF's argument that they failed to allege actual reliance." (#123 at 10.) Thus, this claim will be dismissed.

### E. Civil Conspiracy

Fifth, BASF argues—for the first time in its reply brief —that plaintiffs' civil conspiracy claim should be dismissed. To adequately plead a claim for civil conspiracy,

---

[1] Except for one footnote in BASF's motion to dismiss (#110 at 14 n.14), the parties have not briefed whether a fraud-on-the-agency claim would be preempted.

plaintiffs must allege: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) [plaintiffs were] thereby damaged." *Roberts*, 367 S.W.3d at 22.

Again, plaintiffs allege that, prior to 2015 and continuing to date, Monsanto and BASF conspired to create an "ecological disaster" where farmers would be forced to buy dicamba-based products. In 2015 and 2016, Monsanto and BASF "colluded" so that Monsanto's dicamba-tolerant seed would be released before either company released its new dicamba-based herbicide; the new dicamba would not drift like the old dicamba. Then, the companies' agents allegedly encouraged farmers to illegally spray old dicamba (boosting BASF's sales of old dicamba) on their dicamba-tolerant crops. In turn, neighboring farmers would be forced to buy dicamba-tolerant seed so that old dicamba would not kill their intolerant plants. With all these farmers buying dicamba-tolerant seed, the market for both companies' new dicamba herbicide would grow.

Plaintiffs also allege Monsanto and BASF "formed a partnership and a written joint licensing agreement to share technologies[.]" (#77 at 109, ¶ 621.) They allegedly worked together in developing and testing their products. They "issued coordinated public statements and offered identical stated causes" explaining what caused crop damage. (#77 at 109, ¶ 634.) Monsanto and BASF allegedly even "conspired to threaten, harass, and intimidate innocent landowners from complaining or seeking regulatory or legal assistance." (#77 at 109, ¶ 636.)

BASF argues this claim should be dismissed because plaintiffs allege just one example where a Monsanto representative encouraged a farmer to illegally spray old

13

dicamba. BASF claims this allegation has now been disproved. Even if that allegation has now been disproved, plaintiffs' allegations still satisfy the elements for civil conspiracy, especially since Missouri law does not require "precise" allegations at this stage of the litigation. *See, e.g.*, *Gettings v. Farr*, 41 S.W.3d 539, 542 (Mo. Ct. App. 2001); *Landers v. Monsanto Co.*, No. 1:17-CV-20-SNLJ, 2017 WL 3531378, at *6 (E.D. Mo. Aug. 17, 2017).

## IV. Conclusion

The following counts that seek to hold BASF liable for 2015 and 2016 damage are dismissed: (1) strict liability–design defect, (2) strict liability–failure to warn, (3) negligent design and marketing, (4) negligent failure to warn, and (5) negligent training. Plaintiffs may still bring these counts against BASF for alleged 2017 damage. Plaintiffs may bring counts for trespass, civil conspiracy, and punitive damages against BASF for alleged 2015, 2016, and 2017 damage. Plaintiffs' fraudulent concealment count is dismissed entirely.

Accordingly,

**IT IS HEREBY ORDERED** that defendant BASF's motion to dismiss (#109) is **GRANTED IN PART and DENIED IN PART.**

**IT IS FURTHER ORDERED** that plaintiffs' Count VI for fraudulent concealment is **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiffs' Counts I through V that seek to hold BASF liable for 2015 and 2016 damage are **DISMISSED**.

So ordered this   13th   day of April 2018.

                                                STEPHEN N. LIMBAUGH, JR.
                                                UNITED STATES DISTRICT JUDGE