UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| IN RE: DICAMBA HERBICIDES LITIGATION | ) ) | Main Case 1:18-md-2820-SNLJ Indiv. Case 1:16-cv-299-SNLJ |
|---|---|---|

### MEMORANDUM AND ORDER

This matter is before the Court on Monsanto's motion (#137) to certify for interlocutory appeal this Court's previous memorandum and order (#134) denying Monsanto's motion (#105) for partial summary judgment in *Bader Farms, Inc. v. Monsanto Co.*, 1:16-CV-299-SNLJ (E.D. Mo.). Monsanto's motion will be denied because this Court's order (#134) does not involve a controlling question of law appropriate for interlocutory review under 28 U.S.C. § 1292(b).

### I.  Factual and Procedural Background

Because the facts and procedural background are fully explained in this Court's previous memorandum and order, *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299-SNLJ, 2018 WL 1784394, at *1–3 (E.D. Mo. Apr. 13, 2018), only a short summary is necessary here.

Plaintiffs claim defendants Monsanto and BASF conspired to create an "ecological disaster," where Monsanto released its dicamba-tolerant seed in 2015 and 2016 with no corresponding dicamba herbicide. As a result, farmers illegally sprayed an old formulation of dicamba herbicide (that BASF sold) that was unapproved for in-crop, over-the-top, use and was "volatile," or prone to drift. This damaged neighboring crops, and the threat of more damage supposedly forced neighboring farmers to plant

1

Monsanto's dicamba-tolerant seed defensively. In turn, demand for both defendants' new dicamba herbicide increased during the 2017 growing season.

Monsanto has consistently argued that it cannot be held liable for any 2015 or 2016 crop damage for at least two reasons. First, Monsanto says it did not manufacture, distribute, sell, or apply the old dicamba that allegedly damaged plaintiffs' peach trees in 2015 and 2016. Second, Monsanto says any illegal application of old dicamba was an intervening and superseding cause that broke any chain of causation flowing from Monsanto's conduct.

The parties briefed these issues as part of earlier motions, even before Monsanto moved for partial summary judgment. In ruling on these earlier motions, the Court doubted whether plaintiffs' claims for 2015 and 2016 damage could move forward, based on intervening-and-superseding-cause concerns and product-labeling concerns.

Eventually, the Court ruled on Monsanto's motion for summary judgment. In doing so—and "[w]ith the benefit of a third round of briefing on the viability of plaintiffs' causes of action"—the "Court . . . reassessed its position." *In re Dicamba Herbicides Litig.*, No. 1:16-CV-299-SNLJ, 2018 WL 2117633, at *2 (E.D. Mo. May 8, 2018). The Court explained that "this is a unique case." *Id.* at *2, *3. Indeed, neither the Court nor the parties found another case with similar facts. *Id.* at *2. Despite its earlier doubts, the Court ultimately found that plaintiffs' claims for 2015 and 2016 damage could move forward:

> [A]s this Court understands plaintiffs' argument, why else would Monsanto market and sell dicamba-tolerant seed if not to encourage farmers to use dicamba on their crops? And in the (temporary) absence of Monsanto's

2

corresponding "safe" dicamba, would not the temptation to at least some unscrupulous pigweed-plagued farmers be too great for them to resist? All in all, it seems plausible that some of those farmers would be willing to gamble on the use of an unlawful product in return for a bumper crop.

*Id.* at *3. Thus, the Court declined to hold—as a matter of law—that proximate cause was unsatisfied, and it also declined to hold—as a matter of law—that third-party farmers' illegal spraying of old dicamba was an intervening and superseding cause. Finding plaintiffs' theory plausible under the alleged facts, the Court left the issue of causation for the jury. *Id.*

Now, Monsanto wants this Court to certify its memorandum and order for interlocutory appeal so it can ask the Eighth Circuit to hold as a matter of law, under these alleged facts, either (1) proximate cause must fail or (2) the third-party farmers' illegal spraying of old dicamba was an intervening and superseding cause. Monsanto asks this Court to certify two questions:

1. Under Missouri law, can a defendant manufacturer of an admittedly non-injury-causing product be liable for damage to plaintiff's property caused by another manufacturer's separate product that was used in combination with the defendant's own product, on the theory that such combined use was foreseeable?

2. If so, is such combined use unforeseeable as a matter of law, where it is unlawful and expressly prohibited by the defendant's product labeling?

(#138 at 4.)

## II. Legal Background

Section 1292(b) governs Monsanto's motion:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order

3

> involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). This breaks down to three requirements: "(1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation." *Union Cty. v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (per curiam) (*quoting White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994)).

The Eighth Circuit has advised that "[t]he general purpose of section 1292(b) is to provide interlocutory appeal in exceptional cases . . . to avoid protracted and expensive litigation." *Paschall v. Kan. City Star Co.*, 605 F.2d 403, 406 (8th Cir. 1979). That said, the Eighth Circuit has also warned that "[i]t has, of course, long been the policy of the courts to discourage piece-meal appeals because most often [they] result in additional burdens on both the court and the litigants. Permission to allow interlocutory appeals should thus be granted sparingly and with discrimination." *White*, 43 F.3d at 376 (*quoting Control Data Corp. v. Int'l Bus. Machs. Corp.*, 421 F.2d 323, 325 (8th Cir. 1970)).

## III. Discussion

Section 1292(b)'s requirements are conjunctive, so the Court begins—and ultimately ends—with the first one. The first requirement, "a controlling question of law," really has two parts: the controlling part and the question-of-law part.

4

"There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district-court proceedings." 16 Charles Alan Wright et al., *Federal Practice & Procedure* § 3930 (3d ed. April 2018 update). According to Monsanto, "if the Eighth Circuit were to disagree with the Court's ruling, it would require reversal of any final judgment entered in favor of Plaintiffs on their 2015 and 2016 claims." (#138 at 7.)

Plaintiffs disagree. They claim "the foreseeability of Monsanto's conduct is not a legal question—it is a factual question. The key issue in this case, foreseeability, is not reversible error." (#146 at 10) (internal citation omitted). Plaintiffs are right that foreseeability is a critical element in all proximate analyses. *See Alcorn v. Union Pac. R.R. Co.*, 50 S.W.3d 226, 239 (Mo. banc 2001), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. banc 2013). But as Monsanto points out, in some cases, courts hold—as a matter of law—that proximate cause is unsatisfied. *See, e.g., Patrick v. Perfect Parts Co.*, 515 S.W.2d 554, 556 (Mo. 1974).[1] In

---

[1] Proximate cause can be a confusing concept, and Missouri law is no exception. For example, Monsanto cites some cases that say "proximate cause" is a <u>legal question for the court</u>. *See, e.g., Poage v. Crane Co.*, 523 S.W.3d 496, 512–13 (Mo. Ct. App. 2017), *transfer denied* (June 8, 2017), *transfer denied* (Aug. 22, 2017), *cert. denied*, 138 S. Ct. 1326 (2018). But later, Monsanto cites other cases that say proximate cause is usually a <u>fact question for the jury</u>. *See, e.g., Heffernan v. Reinhold*, 73 S.W.3d 659, 665 (Mo. Ct. App. 2002). Perhaps this is why, more than four decades ago, the Missouri Court of Appeals wrote the following:

> "Proximate cause"—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of his conduct . . . As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability

other cases, courts hold—as a matter of law—that an intervening cause was unforeseeable, which breaks any causal chain flowing from the defendant. *See, e.g.*, *Heffernan v. Reinhold*, 73 S.W.3d 659, 665 (Mo. Ct. App. 2002).

If the Eighth Circuit held either that proximate cause is unsatisfied or that illegal spraying is an intervening and superseding cause—as a matter of law—plaintiffs could not succeed on any 2015 or 2016 claims that have a causation element. Thus, any final judgment in plaintiffs' favor on those claims would be reversed. Thus, the controlling part of the first requirement is satisfied.

---

> for the consequences of any act, upon the basis of some social idea of justice or policy.
>
> This limitation is sometimes, although rather infrequently, one of the fact of causation. More often it is purely one of policy, of our more or less inadequately expressed ideas of what justice demands, or of administrative possibility and convenience, none of which have any connection with questions of causation at all.

*Welch v. Hesston Corp.*, 540 S.W.2d 127, 129 (Mo. Ct. App. 1976) (alteration in original) (*quoting* William L. Prosser, *Law of Torts* 236–37 (4th ed. 1971)). Twenty-four years later, the Missouri Court of Appeals explained that a leading treatise suggests "proximate cause" "is confusing[,] and . . . no wholly satisfactory rule has been established by the countless cases dealing with the subject. If a judge undertakes a novel explanation, seeking to reduce the general confusion, the opinion will probably be savaged by law professors." *Finocchio v. Mahler*, 37 S.W.3d 300, 302–03 (Mo. Ct. App. 2000).

On top the who-actually-decides-proximate-cause confusion, the Missouri jury instructions make no distinction between "cause in fact" and "proximate cause." *See* Missouri Approved Instructions–Civil 31.00 (7th ed.) (general negligence); 25.04 (strict liability–product defect); 25.05 (strict liability–failure to warn). *See also Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 863 (Mo. banc 1993) ("All of this discussion concerning the semantics of causation is less important in Missouri than in most jurisdictions because under MAI we do not use the terms 1) 'proximate cause,' 2) 'but for causation,' or 3) 'substantial factor' when instructing the jury. We merely instruct the jury that the defendant's conduct must 'directly cause' or 'directly contribute to cause' plaintiff's injury."). Despite this seemingly definitive position, the case law persists in distinguishing between "cause in fact" and "proximate cause."

All that said, one thing is clear. When Missouri courts discuss proximate cause, the test they use is well settled: "the injury must be a reasonable and probable consequence of the act or omission of the defendant." *Callahan*, 863 S.W.2d at 865.

The question-of-law part of the first requirement is more complex. Monsanto argues that both its proposed questions are in fact questions of law appropriate for interlocutory appeal. In support of its first proposed question, Monsanto cites Missouri cases that say proximate cause is a question of law for the trial court. *See, e.g.*, *Wagner v. Bondex Int'l, Inc.*, 368 S.W.3d 340, 353 (Mo. Ct. App. 2012). So, in Monsanto's view, the first proposed question clearly is proper under § 1292(b). In support of its second proposed question, Monsanto cites Missouri cases that found, as a matter of law, an intervening cause was unforeseeable. *See, e.g.*, *Heffernan*, 73 S.W.3d at 665. So, according to Monsanto, the second question "asks whether the combined use of two products is unforeseeable, *as a matter of law*, where such use is both unlawful and contrary to product labeling." (#149 at 12.) Thus, Monsanto says, it is also a "question of law" under § 1292(b).

Monsanto's bottom line seems to be this: because this Court could have decided Monsanto's proposed questions *as a matter of law*, and because Monsanto now wants to ask the Eighth Circuit to decide its proposed questions *as a matter of law*, it necessarily follows that the questions are "questions of law" appropriate for interlocutory review. But is this correct? Does "matter of law" mean "question of law" as that phrase is used in § 1292(b). A deeper dive suggests it does not.

Finding no guidance from the Eighth Circuit on the question-of-law requirement, this Court will look to other circuits. Both the Seventh Circuit and Eleventh Circuit have considered this requirement at length.

7

The Seventh Circuit concluded "'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). The Seventh Circuit also explained "[t]he idea was that if a case turned on a pure question of law, something the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Id.* at 677. Finally, the court contrasted deciding a "pure question of law" with deciding a motion for summary judgment: "But to decide whether summary judgment was properly granted requires hunting through the record compiled in the summary judgment proceeding to see whether there may be a genuine issue of material fact lurking there[.]" *Id.*

To satisfy the question-of-law requirement in the Eleventh Circuit, the issue must be a "pure question of law[.]" *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016), *cert. denied sub nom. Lozada Sanchez Bustamante v. Mamani*, 137 S. Ct. 1579 (2017). A pure question of law is "an abstract legal issue," *id.* (*quoting McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1258 (11th Cir. 2004)), that "the court can resolve 'without having to delve beyond the surface of the record in order to determine the facts,' as opposed to a case-specific question of . . . '*whether the district court properly applied settled law to the facts or evidence of a particular case*,'" *id.* (*quoting McFarlin*, 381 F.3d at 1259) (emphasis added).

The Seventh and Eleventh Circuits clearly draw a line between pure questions of law that can be decided without digging into the record and case-specific questions that ask whether the district court properly applied settled law to specific facts. With no Eighth Circuit guidance to look to, this line strikes the Court as a reasonable and prudent one. On which side of the line do Monsanto's questions fall? Clearly, they fall on the applying-settled-law-to-specific-facts side.

Both of Monsanto's questions deal with proximate cause. As noted in footnote one, Missouri's proximate cause test is well settled. *Callahan*, 863 S.W.2d at 865; *see also Stanley v. City of Indep.*, 995 S.W.2d 485, 488 (Mo. banc 1999). So it's unsurprising that Monsanto is not asking the Eighth Circuit to interpret the meaning of the proximate cause test. In fact, Monsanto isn't asking the Eighth Circuit to say much at all about the law. Instead, it's asking the Eighth Circuit to say whether plaintiffs' alleged facts stretch beyond what Missouri's proximate cause test allows. This would require the Eighth Circuit "to say much about these particular plaintiffs' allegations and little about [Missouri's] standard for [proximate cause]." *Mamani*, 825 F.3d at 1313.

Really, Monsanto is asking the Eighth Circuit to make a policy call—a judgment call. *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990) ("Identifying those [cases] within the range of foreseeability who may be injured by an act of negligence[, which a court must do when applying the proximate cause test,] is somewhat an exercise in subjectivity."). Are these plaintiffs' alleged injuries foreseeable or unforeseeable? This is because proximate cause does not exist in a vacuum. Unlike pure questions of law, "[q]uestions of proximate cause and efficient, intervening cause require

9

each case to be decided *on its own facts*." *Buchholz v. Mosby-Year Book, Inc.*, 969 S.W.2d 860, 862 (Mo. Ct. App. 1998) (emphasis added); *see also id.* ("We hold the summary judgment *facts* do not support [a finding that a third-party's acts were an independent and superseding cause].") (emphasis added). In fact, "[t]he cases discussing proximate cause contain the exasperating caveat that in deciding questions of proximate cause and efficient, intervening cause, each case must be decided on its own facts, and it is seldom that one decision controls another." *Krause*, 787 S.W.2d at 710. Thus, neither of Monsanto's proposed questions is a question of law appropriate for interlocutory review. *See In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 285 (7th Cir. 1996) (Ripple, J., dissenting) ("I do not believe that the certification procedure of 28 U.S.C. § 1292(b) ought to be employed as a device to allow interlocutory review of close, fact-bound judgment calls by district courts concerning the adequacy of a complaint.").

Finally, proximate cause's fact-specific nature likely explains why Monsanto found just two cases—of all the cases that have certified questions under § 1292(b)—that certified questions related to proximate cause. (#149 at 11 n.8.) And those two cases dealt with the same issue and the same federal statute; they had nothing to do with common law negligence or products liability. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 234 (2d Cir. 1999), *as amended* (Aug. 18, 1999); *Ark. Blue Cross & Blue Shield v. Philip Morris, Inc.*, No. 98 C 2612, 1999 WL 592671, at *1 (N.D. Ill. Aug. 3, 1999).

Because this Court's order (#134) denying Monsanto's motion for partial summary judgment does not involve a controlling question of law appropriate for interlocutory review, the Court must deny Monsanto's motion.

**IV.     Conclusion**

This Court's order (#134) denying Monsanto's motion for partial summary judgment does not involve a controlling question of law appropriate for interlocutory review.  Thus, Monsanto's motion is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Monsanto's motion (#137) to certify this Court's previous order for interlocutory appeal is **DENIED.**

So ordered this   30th   day of July 2018.

                                      STEPHEN N. LIMBAUGH, JR.
                                      UNITED STATES DISTRICT JUDGE