UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BADER FARMS, INC. and <br> BILL BADER | ) <br> ) <br> ) |
| Plaintiffs, | ) MDL No. 1:18md2820-SNLJ <br> ) |
| v. | ) Case No. 1:16cv299-SNLJ <br> ) |
| MONSANTO CO. and <br> BASF CORP., | ) <br> ) <br> ) |
| Defendants. | ) |

**MEMORANDUM and ORDER**

This matter is before the Court on defendants' motions to dismiss plaintiffs' Third Amended Complaint ("TAC") (#174, #177). The *Bader* plaintiffs claim their peach orchard was destroyed beginning in 2015 after defendants Monsanto Company (a company that sells crop seed and herbicide) and BASF Corporation (a company that sells herbicide) conspired to develop and market dicamba-tolerant seeds and dicamba-based herbicides. Plaintiffs claim both defendants conspired to create an "ecological disaster," where Monsanto released its dicamba-tolerant seed in 2015 and 2016 with no corresponding dicamba herbicide. As a result, farmers illegally sprayed an old formulation of dicamba herbicide that was unapproved for in-crop, over-the-top, use and was "volatile," or prone to drift. Drifting dicamba would cause damage to neighboring, non-tolerant crops, forcing neighboring farmers to plant Monsanto's dicamba-tolerant seed defensively, and that increased demand for both defendants' new dicamba

1

herbicide during the 2017 growing season.

Numerous lawsuits have been filed against defendants based on these circumstances, and the cases filed in federal court have been consolidated into the *In re Dicamba Herbicides* Multi-District Litigation,1:18-MD-2820-SNLJ (E.D. Mo.) (the "MDL"). The present case was filed on November 23, 2016. Plaintiffs have amended their complaint three times now, most recently after this Court's ruling on the defendants' motions to dismiss the Master Crop Damage Complaint filed in the MDL. That Master Crop Damage complaint focuses on soybean growers in several states. The *Bader* plaintiffs, although part of the MDL, did not join in the Master Crop Damage Complaint; the *Bader* case is following its own Case Management Order and is set for trial in January 2020.

This memorandum presumes familiarity with the facts and this Court's earlier memoranda addressing, e.g., the Second Amended Complaint. *See Bader Farms, Inc. v. Monsanto Co.*, 1:16-CV-299-SNLJ, 2018 WL 1784394 (E.D. Mo. Apr. 13, 2018). The TAC (1) added allegations that their peach orchard suffered further dicamba damage in 2018, rendering their peach operation no longer biologically or financially sustainable; (2) removed the claims for trespass and fraudulent concealment and added claims under Missouri Crop Protection Statutes; (3) added allegations pertaining to defendants' joint venture and pleaded joint venture liability as to each claim; and (4) added allegations to clarify that plaintiffs pursue their conspiracy claims under the Restatement (Second) of Torts § 876(a) and (b).

Defendant Monsanto moves to dismiss claims for failure to warn (Counts II and

IV), negligent training (Count V), violation of the Missouri Crop Protection Act (Counts VI and VII), civil conspiracy (Counts VIII and IX), and joint liability for punitive damages (as reflected in Counts X and XI). Defendant BASF moves to dismiss those same counts except the claims for failure to warn.

## I. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of a complaint and eliminates those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

## II. Discussion

Each challenged count is discussed below. Many of the defendants' arguments echo positions they took in their motions to dismiss the Crop Damage Class Action Master Complaint. The Court granted in part and denied in part those motions in *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711 (E.D. Mo. 2019).

## A. Failure to Warn (Counts II and IV)

Monsanto alone moves to dismiss plaintiffs' failure to warn counts. Monsanto argues, as it did in its motion to dismiss the MDL's Master Crop Damage Complaint, that the claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136v(b), which regulates the use, sale, and labeling of pesticides. The parties appear to agree that the same ruling this Court reached in the MDL motion to dismiss should apply here: plaintiffs may not submit failure to warn labeling claims that exceed the parameters of FIFRA. *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 736 ("plaintiffs will not be allowed to submit failure to warn labeling claims that exceed the parameters of FIFRA"). Monsanto suggests this Court should reconsider its ruling regarding non-label-related claims, as this Court held that "non-label-related marketing efforts are not preempted, even to the extent that those claims are based in part on failure to warn." *Id.* at 735. Monsanto relies on the same cases it relied upon in the MDL briefing, which were considered in depth by the Court in its memorandum and order. The Court declines to reconsider.

Monsanto also argues that the failure-to-warn claims must fail because plaintiffs allege that no warning would have prevented their damages. Plaintiffs' Counts II and IV allege that defendants "did not give adequate warnings to purchasers or third-parties of the danger of their dicamba-based products" and that defendants "failed to use ordinary care by neglecting to provide an adequate warning of the danger of their dicamba-based product." (*Id.* ¶ 585, ¶ 608.) At the same time, plaintiffs allege

> 437. The defect is with Defendants' products, not with the labels or the restrictions placed on them…

(TAC ¶ 437.) In addition, plaintiffs allege that "additional application restrictions on the herbicides simply will not fix this problem [of off-target movement]." (TAC ¶ 433, *see also* ¶ 434.)

Under Missouri law, a failure to warn claim requires an allegation that the injury was proximately caused by the alleged deficiency in the warning. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 762 (Mo. *banc* 2011); *Johnson v. Medtronic, Inc.*, 365 S.W.3d 226, 232 (Mo. App. W.D. 2012). Because plaintiffs allege that additional warning regarding the use of defendants' dicamba products would not have prevented their injury, Monsanto argues that they have not pleaded proximate cause.

Plaintiffs disagree. They contend Monsanto is still liable for failure to warn of defects inherent in their products, even if the warning could not have cured, for example, the volatility that made the product defective. They argue that even though application restrictions would not have prevented dicamba from volatizing and moving off-target, proper warning could have altered farmers' decisions to purchase and spray a defective, highly volatile herbicide in the first place. For example, plaintiffs allege that "as consumers were making decisions about what seed and herbicides to purchase and plant in the future, [defendants] ran false, misleading, and confusing advertisements for the Xtend crop system." (TAC ¶ 296.)

This Court concludes that plaintiffs have adequately pleaded failure to warn. The determinative issue in a failure-to-warn claim is "whether the information accompanying

the product effectively communicates …the dangers that inhere in the product during normal use and the dangerous consequences that can or will result from misuse or abnormal use of the product." *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371, 382 (Mo. *banc* 1986). Plaintiffs plead that defendants did not provide adequate warning of the dangers inherent in their products and that plaintiffs were damaged as a result of that failure to warn. Plaintiffs also claim, in their products liability counts, that the defendants' products were defective and unreasonably dangerous. Parties are permitted to plead "alternative statements of a claim or defense" under Federal Rule of Civil Procedure 8(d). For purposes of the motions to dismiss, then, the failure to warn claims survive.

### B. Negligent Training (Count V)

Both Monsanto and BASF move for dismissal of plaintiffs' negligent training count. Plaintiffs admit that they cannot bring negligent training claims with respect to the training of third parties. *See In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 740. Plaintiffs suggest that do not bring any such claims even though they allege defendants had a duty to train "employees, agents, and product users." (TAC ¶ 616; *see also* TAC ¶ 617, 618.) To the extent plaintiffs claim defendants failed to train non-employees/agents, such claim will be dismissed.

Defendants argue plaintiffs have not adequately pleaded a claim for negligent training of defendants' employees/agents.[1] Plaintiffs contend that defendants'

---

[1] The MDL plaintiffs' claims for negligent training of employees/agents were not challenged by

employees/agents were not trained regarding the risk of harm to innocent third parties and thus engaged in behavior that caused harm. Specifically, plaintiffs allege defendants' employees/agents encouraged farmers to spray illegal dicamba formulations, and they refused to inspect plaintiffs' damages or take any action to address damage caused by illegal spraying or failure to follow labels. Plaintiffs also identify Greg Starling, Boyd Carey, and other employees/agents who allegedly failed to take action. In addition, they allege defendants did not train dealers until after a final XtendiMax label was approved, which was well after the alleged illegal spraying of old dicamba damaged plaintiffs' peach trees.

At the motion to dismiss stage, as stated above, plaintiffs must plead facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole*, 599 F.3d at 861. Notably, similar negligent training claims in the Master Crop Damage Complaint survived summary judgment. *See In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 740. Defendant Monsanto now contends that plaintiffs' claim fails because they fail to identify under-trained individuals by name and so have failed to establish that an employment relationship existed. *See J.H. Cosgrove Contractors, Inc. v. Kaster*, 851 S.W.2d 794, 798 (Mo. App. W.D. 1993). However, other cases defendants cite in favor of their position involved complaints which failed to include any allegations about training. Although plaintiffs' allegations regarding training are thin, they have sufficiently pleaded that defendants' employees and/or agents were insufficiently trained, and that they were damaged as a result. The motion to dismiss will

---

the defendants in the motion to dismiss the Crop Damage Master Complaint.

be denied on this claim.

## C. Missouri Crop Protection Act (Counts VI and VII)

Both defendants move to dismiss plaintiffs' claims under the Missouri Crop Protection Statutes, §§ 569.132.2 and 537.353 RSMo. Plaintiffs bring Count VI for intentional damage to crops and Count VII for negligent damage to crops. The Crop Protection Act at § 569.132 says that a person violates the Act if he "intentionally causes the loss of any crop." Further, the Act states that "any person who has been damaged by a violation of this section shall have a civil cause of action under section 537.353." § 569.132.4 RSMo.

Section 537.353 RSMo states as follows:

1. Any person or entity who knowingly damages or destroys any <u>field crop</u> product that is grown for personal or commercial purposes, or for testing or research purposes in the context of a product development program in conjunction or coordination with a private research facility, a university, or any federal, state or local government agency, shall be liable for double damages pursuant to this section.

(Emphasis added.) Defendants contend that plaintiffs' claims under the Act must be dismissed because peaches are not a "field crop" as required by § 537.353, and the statute is limited in that respect.

Section 537.353 does not define "field crop." "The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *State of Missouri v. Knapp*, 843 S.W.2d 345, 347 (Mo. *banc* 1992) (internal quotations omitted). "Absent a statutory definition, words used in

8

statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." *In Matter of Verified Application & Petition of Liberty Energy (Midstates) Corp.*, 464 S.W.3d 520, 525 (Mo. *banc* 2015). Webster's Third New International Dictionary[2] defines "field crop" as "an agricultural crop (such as a hay, grain, or cotton) grown on large areas but excluding fruits, vegetables, and ornamental plants." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 846 (2002). Peaches are, of course, a fruit, and they are therefore not contemplated by the Act allowing for civil damages.

Although § 569.132 refers to the "loss of any crop," and that "any person who has been damaged by a violation of this section shall have a civil cause of action under section 537.353," that latter section does not provide for a cause of action except for damage to "field crops." Although the statutes read together are ambiguous, the term "field crop" is not, and it appears the general assembly limited statutory recovery to "field crops" as opposed to a "any crop."

Counts VI and VII must be dismissed.

### D. Civil Conspiracy (Counts VIII and IX)

Plaintiffs' conspiracy claims fall under two theories: (1) civil conspiracy based on concerted action by agreement in Count VIII; and (2) civil conspiracy by concerted action through substantial assistance (i.e., aiding and abetting) in Count IX. Defendants

---

[2] Webster's Third New International is the Missouri Supreme Court's "institutional dictionary of choice[.]" *AAA Laundry & Linen Supply Co. v. Dir. of Revenue*, 425 S.W.3d 126, 132 (Mo. *banc* 2014).

9

move to dismiss both counts.

This Court addressed at length the MDL Crop Damage Master Complaint's conspiracy claims in light of defendants' motions to dismiss in that case. Defendants, in moving to dismiss the Master Complaint's conspiracy claims, argued that because conspiracy claims required an underlying intentional tort, and because the plaintiffs' intentional tort of trespass should be dismissed, the conspiracy claims should also be dismissed. The Court noted:

> The Restatement appears to require only a underlying tortious or otherwise unlawful act. *Restatement (Second) of Torts* § 876(a).… The Restatement—which, inexplicably, is not quoted in the briefing—states in pertinent part:
>
>> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>>
>> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>>
>> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, ....
>
> *Restatement (Second) of Torts* § 876 (1979). Under these provisions, it appears that liability attaches whether the underlying tort is intentional or negligent. *See id.*, cmt. a, illus. 2; cmt. b, illus. 6.

*In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 731.

Relying on *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983), this Court further analyzed:

> the two subsections of Restatement § 876 correspond generally to two variations of vicarious liability: subsection (a) of the Restatement corresponds to conventional conspiracy, or concerted action by agreement;

10

> subsection (b) corresponds to aiding-abetting liability, concerted action by substantial assistance.

*In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 731-32. Further,

> The prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in a wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct.

*Id.* (quoting *Halberstam*, 705 F.2d at 748). This Court observed that the MDL plaintiffs did not identify which tort claims serve as underlying tortious conduct for their conspiracy counts, nor did the MDL plaintiffs clearly plead which subsection of the Restatement they invoke.

The *Bader* plaintiffs appear to address this Court's concerns in their TAC by bringing a count for conventional conspiracy in Count VIII and a count for aiding-abetting in Count IX.

### 1. Concerted action by agreement (Count VIII)

Under Missouri law, a conspiracy claim requires the following elements: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) plaintiffs were thereby damaged. *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. *banc* 2012). "Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action…. Rather, it acts to hold the conspirators jointly and severally liable for the underlying act." *Id.*

11

> Plaintiffs allege that the two defendants had the following unlawful objective:
>
> The object of the conspiracy is to create an ecological disaster through the use of Defendants' dicamba-based products that will force farmers to purchase their dicamba-based products out of self-defense and cause Defendants to reap great profits at the expense of innocent third-parties, like Plaintiffs, who have suffered damage.

(TAC ¶ 642). Defendants, however, contend the claim should be dismissed because plaintiff fail to allege an "underlying intentional tort."

Notably, neither Missouri's pronouncement of the elements of a conspiracy claim nor the Restatement specifically require an underlying "intentional tort." *See id.*; *Restatement (Second) of Torts* § 876(a) (1979); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 731. No Missouri Supreme Court case is directly on point, and only one other Missouri court has expressly approved a conspiracy claim based on underlying negligence claims. *See Gettings v. Farr*, 41 S.W.3d 539, 543 (Mo. App. E.D. 2001) (allowing claim where co-conspirators agreeing to steal a car held liable where one of them later drove it negligently, resulting in harm to the plaintiff).

Although this Court reiterates the truism that "two parties cannot conspire to act negligently," *Bader Farms*, 2018 WL 1784394, at *5-6, the object of the conspiracy alleged by plaintiffs is not negligence—it is the intentional act of creating an "ecological disaster" to enhance the defendants' profits. In any event, this Court need not address the extent to which a conspiracy can be actionable due to underlying negligent misconduct because, here, all the underlying claims of misconduct in the conspiracy count are couched as intentional misconduct. Notwithstanding this Court's dismissal of plaintiffs'

Missouri Crop Protection Act claim, which would have constituted an intentional tort underlying the conspiracy claim, the other claims are that defendants acted as follows:

- "knew the risks and dangers posed to innocent third-parties…and conspired to and did conceal this information" (TAC ¶ 648)

- "conspired to and did inadequately train and educate" (TAC ¶ 649)

- "conspired to and did provide inadequate warnings, ineffective notices, and confusing labels and use instructions" (TAC ¶ 650)

- "conspired to and did advertise and market their dicamba herbicides as low volatility formulations of an inherently volatile herbicide" (TAC ¶ 651)

- "conspired to and did encourage legal and illegal spraying" (TAC ¶ 653)

- "jointly proceeded with a full-scale launch of their dicamba-based products, causing a wave of destruction…" (TAC ¶ 655)

- "issued coordinated public statements and offered identical stated causes for the damage" (TAC ¶ 656)

- "conspired to and did threaten, harass, and intimidate innocent landowners from complaining or seeking regulatory or legal assistance" (TAC ¶ 659)

- "conspired to and did suppress the level of control they had over their licensees who used their dicamba-based products" (TAC ¶ 660)

Although plaintiffs bring standalone counts for negligent design, negligent failure to warn, and negligent training, those counts are brought against defendants individually

and as joint venturers—not as co-conspirators. The conspiracy count based on underlying intentional misconduct will stand, and the motions to dismiss are denied on this point.

### 2. Aiding and abetting (Count IX)

As for the aiding and abetting count, described by the Restatement (Second) of Torts § 876(b), defendants insist that such a claim is not recognized in Missouri. In support, defendants rely on an Eighth Circuit case that held Missouri would not recognize a § 876(b) claim on the facts of that case. *Jo Ann Howard & Associates, P.C. v. Cassity*, 868 F.3d 637, 651 (8th Cir. 2017), *reh'g denied* (Dec. 15, 2017). Although plaintiffs distinguish *Cassity* as merely declining to recognize a new cause of action on those particular facts, the court analyzed the state of the law in Missouri and elsewhere and concluded that "[w]e are left with little guidance in an uncertain area." *Id.* Ultimately, the Eighth Circuit declined to expand Missouri law to include a § 876(b) aiding-and-abetting claim. *Id.* ("This court has exercised caution in expanding state-law theories of liability that are not foreshadowed by state precedent.").

Plaintiffs cite to other Eighth Circuit cases they say recognize § 876(b) aiding and abetting liability, but those cases explicitly state that they are assuming Missouri recognizes such a cause of action before ultimately finding the claim is factually unsupported. *See Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 403 (8th Cir. 2017); *Rosemann v. St. Louis Bank*, 858 F.3d 488, 499-500 (8th Cir. 2017) (relying on *id.*) Notably, those cases relied on *Bradley v. Ray*, 904 S.W.2d 302, 315 (Mo. App. W.D.

1995), which explicitly observed that Missouri appears not to have recognized the aiding-and-abetting tort under § 876(b). Federal courts sitting in Missouri are also in agreement. *Omaha Indem. Co. v. Royal Am. Managers, Inc.*, 755 F. Supp. 1451, 1459 (W.D. Mo. 1991); *Cardinal Health 110, LLC v. Premiere Healthcare, LLC*, 1:18 CV 165 ACL, 2019 WL 108837, at *7 (E.D. Mo. Jan. 4, 2019). *But see Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1, 5 (Mo. App. W.D. 1996) (holding Missouri does recognize a cause of action under § 876(b)); *Lonergan v. Bank of Am., N.A.*, No. 2:12-CV-04226, 2013 WL 176024, at *11-12 (W.D. Mo. Jan. 16, 2013).

It thus appears that no Missouri Supreme Court case and just one Missouri court of appeals case affirmatively approves of the § 876(b) cause of action. In *White*, the court addressed the aiding-and-abetting claim in the context of encouraging an intoxicated driver to drive dangerously. 930 S.W.2d at 5. The Court is uncertain whether or not the Missouri Supreme Court would adopt a § 876(b) aiding-and-abetting cause of action under other circumstances or under the circumstances of this case in particular. As this Court indicated in its Memorandum and Order in the MDL on the Crop Damage Master Complaint motions to dismiss, 359 F. Supp. 3d at 726, this Court is reluctant to extend state law beyond its traditional purview. The motions to dismiss Count IX will be granted.

### E. Punitive Damages

All but the two Crop Protection Act counts seek punitive damages. Plaintiffs also add a Count XI for punitive damages. In that Count, plaintiffs allege that defendants are

jointly liable for an award of punitive damages.

Defendants maintain that Missouri's statue regarding joint and several liability explicitly states that a defendant "shall only be severally liable for the percentage of punitive damages for which fault is attributed to such defendant by the trier of fact." § 537.067.2 RSMo. Plaintiffs have no objection to a separate jury determination for assessment of punitive damages. The Court will thus grant the defendants' motion for dismissal of plaintiffs' claim for joint liability for any punitive damages award. Plaintiffs' claim for several liability for punitive damages remains.

Accordingly,

IT IS HEREBY ORDERED that the defendant Monsanto's motion to dismiss the Third Amended Complaint is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that defendant BASF's motion to dismiss the Third Amended Complaint is GRANTED in part and DENIED in part.

IT IS FINALLY ORDERED that Counts VI, VII, and IX are dismissed.

So ordered this <u>10th</u> day of July, 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE