UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BADER FARMS, INC. and<br>BILL BADER | )<br>)<br>) |
| Plaintiffs, | ) MDL No. 1:18md2820-SNLJ<br>) |
| v. | ) Case No. 1:16cv299-SNLJ<br>) |
| MONSANTO CO. and<br>BASF CORP., | )<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM and ORDER**

This matter is before the Court on three pending motions. The *Bader* plaintiffs claim their peach orchard was destroyed beginning in 2015 after defendants Monsanto Company (a company that sells crop seed and herbicide) and BASF Corporation (a company that sells herbicide) conspired to develop and market dicamba-tolerant seeds and dicamba-based herbicides. Plaintiffs claim both defendants conspired to create an "ecological disaster," where Monsanto released its dicamba-tolerant seed in 2015 and 2016 with no corresponding dicamba herbicide. As a result, farmers illegally sprayed an old formulation of dicamba herbicide that was unapproved for in-crop, over-the-top, use and was "volatile," or prone to drift. Drifting dicamba would cause damage to neighboring, non-tolerant crops, forcing neighboring farmers to plant Monsanto's dicamba-tolerant seed defensively, and that increased demand for both defendants' new dicamba herbicide during the 2017 growing season.

Numerous lawsuits have been filed against defendants based on these

1

circumstances, and the cases filed in federal court have been consolidated into the *In re Dicamba Herbicides* Multi-District Litigation,1:18-MD-2820-SNLJ (E.D. Mo.) (the "MDL"). The present case was filed on November 23, 2016 and was consolidated into the MDL. Numerous MDL plaintiffs have joined the Master Crop Damage complaint, which focuses on soybean growers in several states. The *Bader* plaintiffs, although part of the MDL, did not join in the Master Crop Damage Complaint; the *Bader* case is following its own Case Management Order and is set for trial in January 2020.

This memorandum addresses defendants' motions pertaining to damages: defendants' motion for summary judgment on damages [#224], defendants' motion to strike the supplemental and rebuttal expert report of Dr. Joseph Guenthner [#203], and defendants' motion to exclude the testimony of plaintiffs' expert Dr. Joseph Guenthner [#213].

**I.      Motion for Summary Judgment on Damages**

Defendants seek summary judgment on plaintiffs' damages claims because they say plaintiffs' theories are neither viable nor supported by competent, non-speculative evidence. Because much of defendants' motion overlaps with their motion to exclude the testimony of plaintiffs' damages expert, the Court first addresses this motion.

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this

burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### 1. Past crop damages

Defendants first argue that plaintiffs include in their damages calculation injuries to the orchard that were caused by something other than dicamba. Plaintiffs' expert Dr. Joseph Guenthner used a formula that defendants concede is consistent with Missouri law for past crop damages: (expected yield x price) minus (actual yield x price) minus avoided costs. Guenthner's revised calculations state that plaintiffs sustained $6,834,694 in lost profit for crop years 2015-2018. Defendants contend that those losses improperly include (1) 2015 losses from a neighbor's application of 2,4-D, flumioxazin, and glyphosate, which caused damage to 400 to 450 acres, (2) a 2015 hail storm that caused 100% loss to 209.9 acres, (3) a 2017 frost that caused a 30% reduction in yields, and (4) a 2018 frost that damaged 314.25 acres. Collectively, the Court will refer to these as the "Disputed Acres."

Plaintiffs deny that their damages numbers include losses from non-dicamba injuries. Dr. Guenthner testified that he took the alleged alternate causes of damage into account in his calculations, and plaintiffs thus respond that defendants simply do not like the way Guenthner accounted for the alternate causes. Further, plaintiffs maintain that the actual cause of damage to the Disputed Acres is highly disputed. They argue that frost, hail, and herbicide damage to trees does not necessarily mean that such events caused permanent damage or yield loss, and that Dr. Baldwin emphasized that the "driving force" behind damages for the relevant years was dicamba. He explained that whatever the damage from the alleged alternative causes, it was exacerbated by or entirely caused by dicamba in that dicamba rendered the trees much more susceptible to those alternate causes. As for allegations that plaintiff Bader certified that "100%" of his loss to 209.9 acres in 2015 was due to hail, plaintiffs again maintain that Guenthner accounted for alternate causes of damage. Defendants will be able to challenge these positions before the jury. The motion for summary judgment is denied on this point.

### 2. Future crop damages

Plaintiffs seek damages to cover the loss of their business caused by dicamba, including future lost profits through the next 25 years. The most recent pronouncement from the Missouri Supreme Court on lost profits is in *Ameristar Jet Charter, Inc. v. Dodson International Parts, Inc*., 155 S.W.3d 50, 54 (Mo. *banc* 2005). The court stated:

> The goal of awarding damages is to compensate a party for a legally recognized loss. … A party should be fully compensated for its loss, but not recover a windfall. … In many contract and tort cases involving damage to persons, property or businesses, a party requests damages for loss of business profits. In evaluating the sufficiency of evidence to sustain awards of damages for loss of business profits the appellate courts of this state have made stringent requirements, refusing to permit speculation as to probable or expected profits, and requiring a substantial basis for such awards.

4

> For an award of lost profits damages, a party must produce evidence that provides an adequate basis for estimating the lost profits with reasonable certainty. … Loss of profits refers to the amount of net profits a plaintiff would have realized if its clients had not been lost as a result of a defendant's actions. While an estimate of prospective or anticipated profits must rest upon more than mere speculation, uncertainty as to the amount of profits that would have been made does not prevent a recovery…. The claimant must establish the fact of damages with reasonable certainty, but it is not always possible to establish the amount of damages with the same degree of certainty.
>
> In some cases, the evidence weighed in common experience demonstrates that a substantial pecuniary loss has occurred, but at the same time it is apparent that the loss is of a character which defies exact proof. In that situation, it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the court or jury. This principle is applicable in the case of proof of lost profits.

155 S.W.3d at 54-55 (internal citations and quotations omitted).

Defendants point out that, here, plaintiffs actually seek future <u>crop</u> losses, and ample (though aged) Missouri authority holds that future <u>crop</u> losses are unavailable because they are too speculative. *Boggs v. Missouri-Kansas-Texas Ry. Co.*, 336 Mo. 528, 535 (1934) *Venie v. S. Cent. Enterprises, Inc.*, 401 S.W.2d 495, 504 (Mo. App. Springfield 1966); *Beaty v. N. W. Elec. Power Co-op., Inc.*, 312 S.W.2d 369, 372 (Mo. App. Kansas City 1958). On the other hand, defendants appear to accept that damages may be available for future fruit tree crop losses, and they state that the measure of damages for future crop loss in fruit trees in Missouri is the difference in the value of the land before and after the destruction of the trees. *Cooley v. Kansas City, P. & G.R. Co.*, 149 Mo. 487 (1899); *see also Butcher v. St. Louis-San Francisco Ry. Co.*, 225 Mo. App. 749 (1931) (collecting cases); *Shannon v. Hannibal & St. J. Ry. Co.*, 54 Mo. App. 223, 226 (1893).

Although the general rule for crop damage may well be the "before" and "after" valuation of the property, as set out in Missouri Approved Instruction 4.02, it is hard to fathom how any "before" valuation can be calculated without regard to the potential for future profits. Regardless, Missouri Approved Instruction 4.01, which is the general damages instruction, appears to be the appropriate damages instruction when both property damage and future profits are claimed. This is especially so because of its proviso requiring that the damages be those plaintiff is "reasonably certain to sustain in the future," a provision that is absent from MAI 4.02. And obviously, this standard precludes the submission of future profits that are speculative, which should alleviate defendants' concerns.

The closest case is *Shady Valley Park & Pool, Inc. v. Fred Weber, Inc.*, 913 S.W.2d 28 (Mo. App. 1995). There, defendant caused mud and silt to flow into plaintiff's lakes, and the plaintiff was forced to close its wholesale fish hauling and fee fishing businesses. Defendant maintained it was responsible only for damages to real property, and not to the business. The *Shady Valley* court held that that plaintiff was not limited to damages to its real property because damages had gone "beyond mere property loss." *Id.* at 35. That court thus held that it had been proper to submit the damages instruction based on MAI 4.01 to the jury. *Id.* at 34–35.

### 3. Other damages evidence

Plaintiffs claim they have already incurred mitigation expenses totaling $1.6 million, but defendants contend plaintiffs have not pointed to a single document evidencing or substantiating any such expenses. The expenses include "plant nutrient materials and application, drip irrigation, pest protection inputs as well as the labor cost of taking out dead and severely damaged trees." Defendants argue that plaintiffs' failure

to substantiate these expenses means that they cannot establish the expenses with the required "reasonable certainty." Defendants further state that plaintiffs should not be permitted to rely upon their self-serving and at times inconsistent testimony: for example, Bill Bader testified that there were no additional mitigation expenses for drip irrigation. Defendants make similar arguments regarding plaintiffs' claims for the reduced asset value of processing equipment.

The Court finds that this issue is not appropriate for summary judgment on these facts. Plaintiffs respond, for example, that although Guenthner mentions drip irrigation as a possible mitigation expenditure, he ascribes no value to irrigation. Defendants have done no more than raised issues for the jury's consideration. They are not for the Court to decide as a matter of law.

## II. Plaintiffs' Expert Joseph Guenthner

Defendants seek to exclude the expert reports of plaintiffs' expert Dr. Joseph Guenthner—both his initial report (#213) and his supplemental and rebuttal reports (#203). Plaintiffs retained Dr. Joseph Guenthner, an agricultural economist, to ascertain the plaintiffs' damages. He has served as an expert witness regarding agricultural damage in nearly 80 cases, including ten fruit tree cases. His first expert report was served February 22, 2019 and concluded that the plaintiffs' damages totaled more than $55 million. Monsanto's economics expert reviewed that report and identified errors in Guenthner's calculations. On July 31, Guenthner served a supplemental and rebuttal report (the "SR Report"), which lowered the plaintiffs' damages amount to approximately $21 million—a 62% reduction. Defendants have moved to exclude Guenthner's testimony as irrelevant and unreliable, and they have moved to strike the SR Report as improperly filed.

7

### A. Legal Standard

To be admissible, Federal Rule of Evidence 702 requires the expert testimony (1) help the trier of fact determine facts at issue; (2) be based on sufficient facts or data; and (3) be the product of reliable principles and methods. In addition, the expert must have reliably applied those principles and methods to facts of the case. This Court must act as a "gatekeeper" in determining the admissibility of expert testimony and must "make a preliminary assessment of whether the proffered expert's methodology is both scientifically valid and applicable to the case." *Bland v. Verizon Wireless, (VAW) LLC*, 538 F.3d 893, 896 (8th Cir. 2007); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

### B. Motion to exclude Guenthner's opinions

Defendants argue that Guenthner's opinions are irrelevant because they do not comport with Missouri law concerning losses to perennial crops. These issues are discussed with respect to the defendants' motion for summary judgment on damages.

As for defendants' argument that Guenthner's testimony is unreliable, defendants argue the initial report is riddled with errors, and the SR Report fails to correct them. (As discussed below, the Court will not strike Guenthner's SR Report.)

Defendants criticize Guenthner's February 2019 report in several ways. They contend the errors must have been significant in the February 2019 report because Guenthner was "forced…to revamp all of his calculations in his second report," the SR Report dated July 31, 2019. In the SR Report, Guenthner revised his estimated damages from $55 million down to $21 million. Guenthner explained that he conducted an alternative analysis of plaintiffs' damages because Bader Farms had not ceased operations as he'd expected in his February 2019 report. He says that instead of

calculating net present value for each planting, he used the average change in profits for 2015-2018 and projected them into the future to reflect future losses stemming from the introduction of Xtend Seed in 2015. He also fixed data errors and added information from annually-filed crop reports.

Defendants also say that the SR Report offers "sweeping methodological and other changes." Defendants argue that Guenthner's SR Report uses inaccurate and unverified acreage or yield information, that he fails to correct inaccurate assessment of the peach life cycle, and that his calculation does not pass the "sanity check."

Defendants argue that Guenthner's data source—Bader's annual filings—are inaccurate for acreage and planting dates and that such errors undermine his analysis. To the extent defendants attack Guenthner's first report at all, plaintiffs now appear to rely instead on the SR Report. The Court will therefore not consider attacks on the initial report alone. Further, plaintiffs deny that Guenthner changed his methodology, and this Court agrees that corrections that Guenthner made to his calculations do not constitute a change in methodology. Though defendants can point to discrepancies between Bader's annual reports and Bader's actual testimony, those discrepancies are grounds for cross examination and not exclusion.

Defendants complain also that Guenthner relied on Bill Bader for data, and that Bader's data are unreliable because they are self-reported. But a business owner's testimony is "sufficient to provide the trier of fact with a rational basis for estimating damages to the plaintiff." *Smith Moore & Co. v. J.L. Mason Realty & Inv., Inc.*, 817 S.W.2d 530, 534 (Mo. App. E.D. 1991). Defendants rely on *US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 691 (8th Cir. 2009) for the proposition that damages experts cannot rely on their client's speculative estimates, but in that case the expert had not

9

verified data or conducted any investigation of market conditions. Plaintiffs counter that in this case Guenthner used actual data from Bader Farms and did substantial market research.

Defendants further criticize assumptions regarding yield variables, especially pertaining to losses based on frosts and freezes. But Guenthner's assumption regarding those losses was based on historical frequency of frosts and freezes at Bader Farms. Although the parties also dispute the life span of peach trees, this, too, is more appropriate for a challenge at trial. All in all, these challenges are not cause to exclude Guenthner's testimony.

Next defendants criticize Guenthner for using data on peach operation costs from the state of Georgia because there is no reason to believe they are comparable to Bader's operations in Missouri. Plaintiffs point out that Bader Farms does not use an "enterprise" accounting system, so it does not record or track costs by crop. As a result, Guenthner reviewed scientific literature and studies from at least ten other states and chose the study containing cost data he determined was most applicable to Bader Farms. This is sufficient reason for using the Georgia study. Again, this is an issue appropriate for cross-examination, not exclusion.

Finally, defendants point to Bader Farms' tax returns, which show Bader's average net income for the four years preceding injury was $109,000. Defendants contend that Guenthner's $20 million damages calculation makes no sense in view of the farm's average profit of only $109,000. Plaintiffs respond that defendants' reliance on net income from tax returns is misplaced because the returns reflect the entirety of Bader Farms' operation for seven crops—not just peaches. Guenthner further testified that tax accounting is not a good measure of profitability and not something he would use to form

10

his opinion. *See, e.g.*, *In re Genetically Modified Rice Litig.*, 4:06MD1811 CDP, 2010 WL 2926214, at *1 (E.D. Mo. July 20, 2010) (recognizing that plaintiff offered testimony that its rice operations, in particular, were profitable, despite the fact that its tax returns may have reflected that the organization, as a whole, was not."). Again, defendants may cross-examine Guenthner on these issues, which go to weight and credibility. However, the Court is indeed concerned with the glaring discrepancy between the net income on tax returns and Guenthner's damages calculations. At this point, neither party provides enough information for the Court to properly evaluate that discrepancy.

Ultimately, this Court declines to exclude Guenthner's testimony and will deny defendants' motion.

### C. Motion to strike SR Report

Defendants argue that Guenthner's SR Report does not qualify as a "supplement" or a "rebuttal" because, they say, it was improperly used to change Guenthner's analysis and correct mistakes.

This matter has had several scheduling orders and related stipulations. They always contemplated a plaintiffs' rebuttal report and depositions for same. The SR Report was served by agreement on July 31, more than a month before the close of discovery. Defendants deposed Guenthner again on August 16. Discovery closed on September 4.

Defendants do not like Guenthner's SR Report, and they criticize numerous aspects of its contents. Among other things, the SR Report corrected Guenthner's assumption that plaintiffs' peach operations would cease after the 2018 harvest—surely defendants would have complained if Guenthner had not made this correction. These criticisms are appropriately made before a jury, but they are not grounds for this Court to strike the report.

Accordingly,

IT IS HEREBY ORDERED that the defendants' motion for summary judgment on damages [#224], defendants' motion to strike the supplemental and rebuttal expert report of Dr. Joseph Guenthner [#203], and defendants' motion to exclude the testimony of plaintiffs' expert Dr. Joseph Guenthner [#213] are DENIED.

So ordered this 20th day of December, 2019.

                                                        STEPHEN N. LIMBAUGH, JR.
                                                        UNITED STATES DISTRICT JUDGE