UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| BADER FARMS, INC. and | ) | |
| BILL BADER | ) | |
| | ) | |
| Plaintiffs, | ) | MDL No. 1:18md2820-SNLJ |
| | ) | |
| v. | ) | Case No. 1:16cv299-SNLJ |
| | ) | |
| MONSANTO CO. and | ) | |
| BASF CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

On December 31, 2019, this Court denied defendant BASF Corporation's motion for summary judgment (#288). This Court held, *inter alia*, that a question of fact existed regarding whether BASF and co-defendant Monsanto were joint-venturers. BASF has moved for reconsideration under Federal Rule of Civil Procedure 54(b) (#322).[1]

First, BASF argues that this Court applied the preponderance of the evidence standard rather than the clear and convincing evidence standard. In support of the clear and convincing standard, BASF relies on *Cutcliff v. Reuter*, 889 F.3d 491, 495 (8th Cir. 2018), in which the Eighth Circuit stated that a partnership can be established "by implication…only …where there is clear, cogent and convincing evidence that the purported partners have made a definite and specific agreement." *Id*. (quoting *Morrison v. Labor & Indus. Rel. Comm'n*, 23 S.W.3d 902, 909 (Mo. App. 2000)). This Court,

---

[1] This Memorandum and Order assumes familiarity with the Court's summary judgment Memorandum and Order (#288).

1

however, is bound to follow the law of the Supreme Court of Missouri in this case. *See Williamson v. Hartford Life and Acc. Ins. Co.*, 716 F.3d 1151, 1154 (8th Cir. 2013) ("A federal court must follow the announced state law … unless there are very persuasive grounds for believing the state's highest court would no longer adhere to it."). BASF states in its reply that *Grissum v. Reesman*, 505 S.W.2d 81, 86 (Mo. 1974), "applied the clear and convincing evidence standard to determine whether the plaintiff and her brother formed a partnership by implication." (#323 at 3 (citing *Grissum*, 505 S.W.2d at 86.) But as this Court painstakingly set out in *Morley v. Square, Inc.*, 4:10CV2243 SNLJ 2016 WL 1615676 (E.D. Mo. Apr. 22, 2016), although *Grissum* is the most recent Missouri Supreme Court pronouncement, the rule has been frequently misstated. Per *Grissum*, 505 S.W.2d at 86, the rule in Missouri is that

> [a] preponderance of the evidence is necessary and sufficient to prove a joint adventure. The clear and convincing standard, then, is simply the exception to the general rule for [cases involving an oral contract to convey real estate or a resulting trust in real property].

*Morley*, 2016 WL 1615676, at *7 (internal citation omitted). *Grissum* relied on *Brooks v. Brooks*, 208 S.W.3d 279 (Mo. 1948), which in turn relied on 48 C.J.S. Joint Adventures, § 12 (1965), for the general rule that a "preponderance of the evidence is necessary and sufficient to prove a joint adventure." *Id.* at 284. Not long after *Grissum*, an appellate court stated (relying on *Grissum*) that the agreement must be "proved by cogent, clear and convincing evidence, or at least by a preponderance of the credible evidence." *Brotherton v. Kissinger*, 550 S.W.2d 904, 907 (Mo. App. S.D. 1977). This confusion continued as other cases relied on *Brotherton*, such as *Morrison*, 23 S.W.3d at

2

909.[2] *Cutcliff*, relied upon by BASF, cites *Morrison* and notes that a partnership must be proved by "clear, cogent, and convincing evidence," but omits a later passage in *Morrison* that includes the phrase "…or at least by a preponderance of the evidence." *Compare Cutcliff*, 889 F.3d at 495, *with Morrison*, 23 S.W.3d at 909. In any event, as BASF appears to acknowledge, the Missouri Supreme Court has not reversed *Grissum*. And this Court is bound to follow *Grissum* as the most recent Missouri Supreme Court pronouncement. *Williamson*, 716 F.3d at 1154.

Second, BASF contends that this Court applied the wrong state's law. This Court applied Missouri law to the plaintiffs' joint venture claim. BASF argues that New York law applies because the defendants' written agreements invoke New York law. BASF stated in its summary judgment briefing that New York and Missouri law are the same with respect to the issues here. However, BASF now states that the two states diverge regarding whether "shared losses" are required to support a finding that a joint venture exists. BASF argues it is entitled to judgment under New York law.

If this case presented an issue between BASF and Monsanto regarding one of the pertinent contracts, then it is clear that New York law applies to govern the contract. *See Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 688 (8th Cir. 2001). However, the question here is whether the defendants were engaged in an implied joint venture, based

---

[2] Other Missouri appellate courts appear to overlook the distinction *Grissum* set out altogether, relying only on the clear and convincing standard. *Clark v. Francis*, 422 S.W.3d 369, 378 (Mo. App. W.D. 2013); *Winslow v. Nolan*, 319 S.W.3d 497, 501 (Mo. App. E.D. 2010); *Price v. Vattes*, 161 S.W.3d 397, 400 (Mo. App. S.D. 2005); *H2O'C v. Brazos*, 114 S.W3d 397, 402 (Mo. App. W.D. 2003); *Nesler v. Reed*, 703 S.W.2d 520, 523 (Mo. App. E.D. 1985)

3

on their actions and not necessarily on the written agreements alone. *See Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 14-15 (Mo. 1970). The contracts' choice of law provision does not apply to third parties whose claims sound in tort. *See Inacom Corp.*, 254 F.3d at 688.

All that said, the Court has considered the substantive aspects of BASF's motion and reiterates its holding that the question of whether or not a joint venture existed must go to the jury. This Court already explained the basics of a joint venture:

> A joint venture is "an association of two or more persons to carry out a single business enterprise for profit.*" Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 387 (Mo. App. 1999). The elements of a joint venture are (1) "an express or implied agreement among members of the association," (2) "a common purpose to be carried out by the members," (3) "a community of pecuniary interest in that purpose," and (4) an "equal voice" among all members "in determining the direction of the enterprise." *Id.* In other words, a joint venture is a partnership that is limited to a single business purpose. *See Jeff-Cole Quarries, Inc. v. Bell*, 454 S.W.2d 5, 14-15 (Mo. 1970). With respect to corporations, however, Missouri courts have declined to imply a joint venture "where the evidence indicates that the parties created a different business form." *Ritter*, 987 S.W.2d at 387; *Rosenfeld v. Brooks*, 895 S.W.2d 132, 135 (Mo. App. 1995). Regardless, "[i]ndications of a joint venture include: actively participating and sharing in the profits, all parties having joint and several control, and having a duty to share the losses." *Ritter*, 987 S.W.2d at 387 (citing *Jeff-Cole Quarries*, 454 S.W.2d at 16).

(#288 at 11.)

The Missouri Supreme Court has emphasized that the components of common control and mutual profit are most demonstrative of a joint venture. *Pigg v. Bridges*, 352 S.W.2d 28, 33 (Mo. banc. 1961). Indeed, the term "profit" necessarily contemplates a "benefit [or] advantage remaining after all costs, charges, and expenses have been deducted from income." *Labor Discount Ctr., Inc. v. State Bank & Tr. Co. of Wellston*,

4

526 S.W.2d 407, 424 (Mo. App. E.D. 1975). Furthermore, it appears clear that the "shared losses" factor is not a strict requirement in Missouri. *Morley*, 2016 WL 1615676, at *8. To be sure, parties can, through their contractual relationship, allocate their loss liabilities in unequal amounts and kind. *See Allison v. Dilsaver*, 387 S.W.2d 206, 213 (Mo. App. S.D. 1965). In fact, "[t]here need not necessarily be an agreement to share losses" at all. *Pigg*, 352 S.W.2d at 33.

The import of these cases is summed up in 48A C.J.S. *Joint Ventures* § 14 (Dec. 2019), which explains in pertinent part:

> although some authority requires an express loss-sharing provision, at least where an agreement includes a provision for sharing profits, it is more commonly held that <u>there need be no specific agreement to share in the losses</u> since an agreement to share losses may be implied from an agreement to share profits. Further, <u>the term "losses" is not limited to monetary losses</u> but includes time expenditures and out-of-pocket expenses, especially where one party to the venture furnishes property, and the other only services … Moreover, if the nature of the undertaking is such that no losses other than those of time and labor in carrying it out are likely to occur, an agreement to share in the profits might stamp it as a joint venture although nothing is said about the losses.
>
> The fact that a contract provides for a sharing of the profits, while an important factor in determining the character of the contract, does not of itself make it one of joint venture. The profit accruing to a joint venture must be joint and not several. Profits which are severally earned, the parties merely having dealt with the same subject matter, but not for and on behalf of each other, do not meet this requirement of the existence of a joint adventure. Still, <u>the mode of participation in the fruits of the undertaking may be left to agreement of the parties, and the benefits need not be of equal value or kind</u>. Thus, the fact that there is to be unequal distribution of profits does not contravene the idea of joint venture, and the parties to the joint venture may limit by special contract their respective profits and agree which part of the expense each should bear before participating in profits.
>
> Whether an agreement to share profits is merely a measure of compensation for services, or whether it extends beyond and bestows ownership and interest in the profits themselves so as to constitute a joint venture is a question of fact.

5

(emphasis added); *see also Restatement (Second) of Torts* § 491 (1965); 48A C.J.S. *Joint Ventures* § 11 ("[T]he term 'community of interest' as applied to the relation of joint venture means an interest common to both parties, that is, a mixture of identity of interest in a venture in which each and all are reciprocally concerned and from which each and all derive a material benefit and sustain a mutual responsibility."); 46 Am. Jur. 2d *Joint Ventures* § 16 ("[W]here parties share in the same revenue stream, the shared-profits element required to establish the existence of a joint venture may be established.").

Defendants reiterate that Monsanto's "value share payments" to BASF are "royalties" that do not constitute "profit-sharing" and so do not support a "community of pecuniary interest." In support, defendants cite *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003). In *Dinaco* the court held that a "royalty agreement" between trademark licensor and licensee established "contractual obligations, not a business enterprise." 346 F.3d at 68. *Dinaco* is distinguishable. Unlike *Dinaco*, the parties here collaborated on the development of the product itself—a dicamba-tolerant seed system— exercising a significant measure of joint control over the process. Moreover, the parties do not call the related payments "royalties," but rather "value share payments." Monsanto agreed to pay BASF based on the number of acres planted with "traited" seeds. Although no agreement stated that either company has profit-sharing rights as to sales of the other's dicamba herbicides, plaintiffs argue that the value share payments were necessary to equitably distribute earnings from the Xtend seeds BASF helped create. It was not enough, apparently, for BASF to enjoy the earnings from its Engenia sales, which were undoubtedly related to the Xtend seeds. From this and other evidence, the jury may find that BASF's right to value share payments contributed to the kind of "community of pecuniary interest" necessary to demonstrate a joint venture.

As the Court understands it, plaintiff's theory is that Monsanto and BASF entered into and acted on multiple agreements evidencing their joint venture to develop and commercialize their DT system, and their conduct pursuant to those agreements support that a joint venture was in fact created. The question of whether defendants were engaged in a joint venture must be left to the jury.

Accordingly,

IT IS HEREBY ORDERED that BASF's motion to reconsider (#322) is DENIED.

So ordered this  3rd  day of February, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE