UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BADER FARMS, INC., ) | |
| ) | MDL No. 1:18-md-02820-SNLJ |
| Plaintiff, ) | |
| ) | Indiv. Case No. 1:16-cv-00299-SNLJ |
| v. ) | |
| ) | |
| MONSANTO COMPANY and ) | |
| BASF Corporation, ) | |
| ) | |
| Defendants. ) | |

**<u>MEMORANDUM and ORDER</u>**

This matter is before the Court on Monsanto's motion to seal certain trial exhibits and related testimony [#631].  Plaintiff responded in opposition, and the motion has been fully briefed.

**I.     Background**

A three-week jury trial was held in this matter beginning January 25, 2020.  On January 17, 2020, BASF filed a motion [#360] respecting confidentiality in which Monsanto joined.  [#358.] Defendants proposed that material marked Confidential and Highly Confidential be sealed, that the courtroom be closed when a Highly Confidential document was introduced, that the jury be instructed not to disclose "confidential trade secret information," and that within 45 days after receipt of the final trial transcript, Defendants could move to maintain sealing of "trade secrets and confidential business information." [#360.]  This Court denied defendants' motion, ruling instead that it was willing "to grind through whatever it takes" to address "highly confidential or

1

confidential marked exhibits one-by-one as they're introduced." This Court instructed defendants to advise the Court "what exactly the objections are and just how confidential [the document] is so that [the Court could] address" confidentiality at the time of introduction. [1/24/2020 Trial Tr. at 74.]  At trial, defendants did not address confidentiality of any document or testimony.  As a result, documents and testimony were admitted into evidence.

Monsanto, on May 29, 2020, filed the instant motion to seal certain trial exhibits and corresponding transcript testimony.  It argues that the materials, if not sealed, will cause harm to Monsanto, BASF, and/or non-parties because they contain information falling into one or more of the following categories:  (1) grower personal identifying information and/or other private or commercially sensitive information; (2) confidential contract terms between Monsanto and BASF regarding the development of dicamba tolerant technologies; (3) Monsanto's claims resolution processes containing proprietary information including staffing and funding resource levels; (4) testing as to non-commercialized, non-public products; and (5) employee contact information.

Plaintiff contends it is too late to seal these materials from public view.

**II.    Legal Standard**

The Eighth Circuit recognizes the common law right of access to judicial records. *Webster Groves Sch. Dist. v. Pulitzer Pub. Co.*, 898 F.2d 1371, 1376-77 (8th Cir. 1990) (citing *Nixon v. Warner Comm.*, 435 U.S. 589, 597 (1978)).

> This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and "to keep a watchful eye on the workings of public

2

agencies." It also provides a measure of accountability to the public at large, which pays for the courts.

*IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citations omitted).

"It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). Because the right to access is not absolute, it "requires a weighing of competing interests." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 245 F.R.D. 632, 636 (D.Minn.2007) (quoting *Webster Groves Sch. Dist.*, 898 F.2d at 1376). However, "only the most compelling reasons can justify non-disclosure of judicial records." *In re Neal*, 461 F.3d 1048, 1053 (8th Cir.2006) (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 6 (1st Cir. 2005)).

"The presumption in favor of access places the burden on the party seeking to maintain confidentiality to establish sufficient grounds for prohibiting public access to the record." *Monsanto Co. v. E.I. DuPont De Nemours & Co.*, 4:09CV00686 ERW, 2012 WL 5830580, at *2 (E.D. Mo. Nov. 16, 2012). Although the Eighth Circuit has not provided explicit guidance, other courts have employed six factors to determine whether a party has overcome the presumption in favor of publication:

> Those factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

3

*See id.* (citing, *inter alia*, *United States v. Hubbard*, 650 F.2d 293, 318 (D.C. Cir. 1980), and dubbing these factors the "*Hubbard* factors.").

### III. Discussion

The Court will address each category of documents/testimony.

First, however, the Court addresses plaintiff's overarching objection, which is that defendant Monsanto has filed its motion too late. Plaintiff contends that defendant should have addressed confidentiality during the trial, and that defendant's months-later motion cannot unring the bell. The documents and testimony, plaintiff says, have been in the public domain for months. Journalists covered numerous aspects of the trial, and the parties cited extensively to contracts and invoices that Monsanto now wishes to withdraw from the public record. Plaintiff cites many out-of-Circuit cases to support its position. [#637 at 6-7.]

Monsanto responds that it went to great lengths to protect the confidentiality of the information sought to be sealed by the instant motion. Monsanto points out that the Protective Order entered in the MDL notes that "Confidential" and "Highly Confidential" information could be presented to the jury, which means the confidentiality designations would not be waived at trial. [MDL #54 at ¶9(a)(vii) and ¶9(b)(i).] The problem with Monsanto's argument is that the information was presented to the jury in open court. The Confidential and Highly Confidential documents were thus presented to the public and were in some cases picked up by members of the media and published elsewhere. There is no way to claw back information that has been disseminated by news outlets.

However, it is another matter for the exhibits and trial testimony to remain public and unsealed.  The trial exhibits were all returned to the parties pending appeal, so none of those exhibits are currently readily available.  That said, plaintiff points out that some exhibits have been made publicly available on the internet by third parties.

Monsanto appears to acknowledge this, noting that the balancing test "favors precluding further public disclosure."  [#656 at 2.]  And this Court agrees that there is little justification to leaving some matters open to public disclosure.  Each matter is addressed below.

**Non-party Growers**.  The exhibits and related testimony in this category contain information related to non-party growers.  These include a spreadsheet identifying the name, street address, and purchase history of growers located within 15 miles of Bader Farms; emails identifying growers and seed purchase information; and testimony identifying growers reporting off-target movement.

Plaintiff responds that Monsanto overstates the personal nature of the information at stake.  One exhibit contains no personal identifying information beyond the grower's name and brief mention of a single purchase.  Another contains names and addresses but nothing more than the type of crop grown and a column titled "Reported GPOS Unit." Plaintiff argues that names and addresses are largely public information, and use of particular seed is not privileged information.  However, plaintiff ignores that, pursuant to Local Rule 2.17(A)(5), plaintiff was required to redact the non-parties' mailing addresses before seeking to admit the exhibits.  It appears to this Court though, that the fact of the seed sales is not so private as to mitigate against disclosure.  Plaintiff should redact the

5

exhibits in accordance with the local rule, but this Court will not seal the exhibits otherwise.

As for the personal information regarding non-party growers who reported off-target movement, Monsanto seeks to protect this information because its publication could deter growers from communicating with Monsanto in the future regarding potential instances of misapplication or misuse of Monsanto's products. Courts have found a significant risk to voluntary reporting if a declarant's identity is revealed. *See, e.g.*, *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 930 (D.C. Cir. 2003) ("A potential witness or informant may be much less likely to come forward and cooperate with the investigation if he believes his name will be made public."); *Alyeska Pipeline Serv. Co. v. U.S. E.P.A.*, 856 F.2d 309, 311 (D.C. Cir. 1988) (affirming that disclosure of reporters' identities might "thereby subject them to potential reprisals and deter them from providing further information"). Monsanto argues that the deterrent effect is of particular concern here, where neighboring growers have both personal and professional relationships with one another. This Court declines to seal the exhibit. To the extent the local rules require redaction, the plaintiff should so-redact.

**Contact list for Monsanto and BASF Employees.** This list, Ex. PLTF 1378, contains names, titles, work phone numbers, cell phone numbers, and email addresses of approximately 45 Monsanto and BASF employees who worked on the dicamba technologies. Monsanto explains that it seeks sealing of this document to avoid the risk of unnecessary or unwanted contact with its employees. To accommodate the public's interest in the information while mitigating the aforementioned risk, Monsanto proposes

6

redacting only the employee phone numbers and email addresses.  There is no reason for phone numbers and email addresses to remain public information, and they should be redacted before being filed with the Court.

**Commercially Sensitive Information.**  These documents include confidential contracts and Monsanto's claims process system.  These exhibits such as the Umbrella Agreement, invoices, and other agreements, contain contractual terms and related information, including the specific royalty rate paid by Monsanto.

Ex. PLTF 1014 is a Royalty Invoice to Monsanto.  Although numerous invoices were introduced at trial, this is the only invoice Monsanto seeks to seal.  The document was also produced by BASF and it was an exhibit to a BASF post-trial motion.  News articles include the information regarding the amounts of royalty payments paid to BASF. Monsanto suggests it would be at a competitive disadvantage if this invoice is not sealed, but that argument does not hold water in light of the circumstances.  This exhibit will not be sealed.

Exs. PLTF 1103, B 672, B 673, and B 677 are the various agreements between Monsanto and BASF, and Ex. PLTF 1108 is a PowerPoint presentation detailing terms of one key agreement.  Monsanto argues that public disclosure of the confidential contract terms would harm the defendants' competitive standing.  For example, Monsanto says that the terms could form the baseline or starting point for future negotiations.  But plaintiff points out that these documents have been appended to briefs not under seal. Monsanto further argues that the terms upon which the defendants contracted were

immaterial to the joint venture claim, but this Court disagrees.  This Court will not retroactively seal the Agreement exhibits.

**Internal Processes and Procedures.**  These exhibits pertain to Monsanto's claim processes for various issues reported by growers, including product performance issues that it says are irrelevant to this litigation.  Monsanto says market participants could use these documents to obtain the benefit of Monsanto's experience and resources.  This Court, in entering the Protective Order in this case, found that this lawsuit involved sensitive information not available to the public that warranted protection, such as "pricing information, development, commercial, financial, technical and/or proprietary information."  Plaintiff points out that information regarding defendants' claims processes is highly relevant to the foreseeability of harm, the defendants' coordinated response, the refusal to settle claims, and the "reprehensibility" of their conduct.  Further, documents showing the claims processes, including documents Monsanto now wants sealed, were filed as exhibits to post-trial briefing.  Again, these documents were shown to the jury and to the public, and this Court declines to seal them now.

**Commercially sensitive information regarding Non-Commercialized Products.**  These include documents regarding testing data and testing conditions regarding the volatility of the non-commercialized Monsanto product, Roundup Xtend, as compared to Clarity.  Roundup Xtend was never commercialized and, Monsanto says, was irrelevant to the litigation.  Plaintiff says it was relevant because the relative volatility of dicamba with and without glyphosate (the active ingredient in Roundup) is of interest because defendants encouraged the mixing of the two.  Although Roundup Xtend

8

(i.e., Roundup mixed with dicamba) was never sold in the United States, plaintiff says it was advertised in Canada, and, regardless, the science of the combined chemicals is relevant to what was actually used in the United States.  This Court agrees that the information conveyed by these documents was relevant to the litigation—as Monsanto concedes, volatility testing data for XtendiMax tank mixed with glyphosate was provided to the EPA and admitted into evidence.  Monsanto's suggestion that data regarding pre-mixed dicamba and glyphosate is too far removed to be relevant rings hollow; it appears that, whether pre-mixed or tank-mixed, adding glyphosate to dicamba increased volatility.

Further, Monsanto does not explain the harm that would come from not retroactively sealing the documents, particularly because similar or identical information was already made public.  Ex. PLTF 546, which Monsanto seeks to seal, was also admitted as an exhibit as an attachment to Ex. PLTF 130, which Monsanto does not seek to seal.  That email describes the testing insight on how to  improve dicamba formulations respecting volatility.  Notably, BASF itself moved to admit Ex. PLTF 546 without objection.  And, the other document Monsanto seeks to retroactively seal, Ex. PLTF 299, was also admitted without objection and is available on the internet, along with similar documents Monsanto did not seek to seal.  This Court declines to retroactively seal these documents.

Accordingly,

IT IS HEREBY ORDERED that Monsanto's motion to seal [#631] is DENIED in part and GRANTED in part as explained herein.

Dated this 28th day of January, 2021.

                                                         _____
                                                         STEPHEN N. LIMBAUGH, JR.
                                                         SENIOR UNITED STATES DISTRICT JUDGE